### TONNELE v. WETMORE et al.

(Supreme Court; Appellate Division, First Department. March 13, 1908.)

**1. TRUSTS—EXPRESS TRUSTS CREATED BY WILL—VESTING OF TITLE IN TRUSTEES.**

Under 1 Rev. St. (1st Ed.) p. 729, pt. 2, c. 1, tit. 2, § 60, providing that every express trust except as otherwise provided shall vest the whole estate in the trustees, subject only to the execution of the trust, etc., the fee to real property left in trust by a will vests in the trustees therein appointed, and under the express provisions of section 68 (page 730), upon the death of the trustees, the trust vests in the Supreme Court, to be exercised by it or by trustees appointed by it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 221.]

**2. JUDGMENT—CONCLUSIVENESS—PARTIES CONCLUDED — UNBORN REMAINDER-MEN.**

Certain beneficiaries under a devise of real property in trust brought an action to construe the will, alleging the invalidity of the trust as violating the statute agains perpetuities. None of the trustees, in whom the fee to the property had vested was made a party, nor were the trustees represented in any way. *Held*, that a judgment rendered in the action declaring the trust void would not bind an unborn grandson of the testator, who under the trust was a remainderman, since his interests were not represented by the presence of a representative of the trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1202.]

**3. WILLS—EQUITY—JURISDICTION—TRUSTS.**

The only ground upon which a court of equity exercises jurisdiction in relation to wills disposing of real property is to enforce a trust, and hence it has no jurisdiction of a proceeding to construe a will leaving real property in trust, where the sole purpose is not to enforce the trust but to overthrow it as violating the statute against perpetuities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1676.]

**4. SAME—CONSTRUCTION—INTENTION OF TESTATOR.**

In construing a will, the intent of the testator must be first ascertained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 955.]

**5. PERPETUITIES—SUSPENSION OF ABSOLUTE POWER OF ALIENATION—TRUSTS—TERMINATION.**

A will gave testator's wife a life estate in certain real property, and provided that, on her death, the property should be divided among his eight children, in such manner that each should receive only the net rents, etc., during life, and at the death of each child his or her share should vest in his or her lawful issue, with a remainder over in default of issue. The executors were appointed trustees of the property given to any one of the children, during the life of such child, and were given

power to sell any part of the real estate, or to retain it in their hands unsold and undivided until after 1867. The testator died in 1852. *Held*, that the testator's intent was that his widow should have a life estate irrespective of the trust; that upon the termination of the life estate the property should be divided into eight parts, one part to be devised to the trustees to hold during the life of each child, and that immediately upon that child's death, the remainder should vest in his or her issue, or in default of issue in the remaindermen, thus providing a limit for the continuance of the trust, which could not extend beyond the period of two lives in being and hence the trust did not violate the statute against perpetuities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 45–53.]

6. SAME.

The provision that the trustees should have power to retain the property in their hands unsold and undivided until after 1867, coupled with the power to sell it if they deemed best, was intended to be conditioned upon the trust continuing until that time, and did not extend the estate devised to the trustees, nor prevent the alienation of the estate, especially in view of the fact that the termination of the life estate and the passing of title to the trustees occurred after the date limited and prevented the provision from becoming effective.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 45–53.]

7. SAME.

Even if the provision permitting the trustees to retain the property undivided until after 1867 were void, it would not affect the trust, since the trust commenced only upon the widow's death, and lasted only during the life of each child, after which that child's share passed to its issue, irrespective of whether the trustees retained or sold the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 45–53.]

8. WILLS—CONSTRUCTION—PERMISSIVE WORDS—CONSTRUCTION AS MANDATORY.

Permissive words in a will will not be considered mandatory when the result would be to change the clearly expressed intention of the testator and render void a carefully prepared scheme for the disposition of his estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 960.]

Houghton and Laughlin, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Ejectment by Laurent J. Tonnele against Francis S. Wetmore and others. Judgment for defendants, and plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

John R. Halsey, for appellant.

William T. Emmet, for respondents F. S. Wetmore et al.

Grenville T. Emmet, for respondent Augustus Zabriskie, guardian ad litem for infant.

INGRAHAM, J. This action is in ejectment to recover possession of an undivided interest in real property in the city of New York. The property was owned by one John Tonnele, who died on the 26th of November, 1852, leaving a last will and testament that was duly admitted to probate. The testator left a widow and eight children, his heirs at law. By this will the testator devised to his wife the real property in

question during her natural life or as long as she remained his widow, and devised and bequeathed all the rest and residue of his property, both real and personal, "including, after the death or remarriage of my said wife, whatever I have herein given or devised to her for life or widowhood, respectively," to his eight children, to be equally divided between them share and share alike, "in such manner that each child receive only the net rents, income and profits of his or her share during her life, and at the death of each child his or her share shall go to and vest in his or her lawful issue," with a remainder over in default of issue. The will further provides:

"Seventh: And in order more fully to carry out the objects of this my will, I do hereby appoint and declare my executors hereinafter named to be trustees of all property, estate or interests herein given or devised, to any one of my children, or that any of my children may he entitled to by virtue of any provision in this my last will, and during the life of such child (excepting the life estate in the mansion house devised to my son) with full power to retain all such property in their hands unsold and undivided until after the year eighteen hundred and sixty seven. And I do authorize my said executors to sell and convey all or any part of my real estate, and all real estate that may be purchased by them, and to invest my personal estate and the proceeds of the sale of such real estate at interest on bond and mortgage of real estate, or in Government or State stocks, or to lay out the same in the improvement of my real estate or in the purchase of other real estate and the improvement thereof, as may seem to them most for the interest and advantage of my children, and for the improvement of my estate. and to change such investments as they shall judge best from time to time."

And the will appointed the testator's wife, Robert Gilchrist, and Abraham O. Zabriskie executors. The plaintiff being the sole issue of Laurent John Tonnele, one of the sons of the testator, would under this disposition of the testator's property, if valid, be entitled on his father's death to one undivided eighth part of the testator's real and personal estate. The testator's widow died in January, 1868, the plaintiff was born on the 2d of May, 1879, and the plaintiff's father died on the 8th day of June, 1901.

The referee found that on the 22d of April, 1874, after the death of the testator's widow, but before the birth of the plaintiff, an action was brought in the Supreme Court of the state of New York for a construction of the will of the said John Tonnele, deceased, the plaintiff in which action was Eloise Gedney, a daughter of the testator, and Gilbert Gedney, her husband; that the defendants in that action were the other surviving children of the testator, and his grandchildren then living; that the plaintiff herein was then unborn, but that his father, Laurent John Tonnele, was a party defendant; that the grandchildren of the said John Tonnele living at the commencement of that action were all minors, and were represented by guardians ad litem; that the complaint in that action claimed that the will of the testator was void as violating the statute against perpetuities; that that action was tried before a justice of the Supreme Court without a jury, and resulted in a decision dated March 5, 1877; that the provisions of the said will creating and declaring trusts of the estate of the testator suspended the power of alienation beyond the period the statute permitted and therefore were void, and that upon the death of the said testator the children then surviving became seised of his lands and hereditaments in the state of New York

in equal shares as tenants in common, subject to the life estate of their mother, Cecile Tonnele, and judgment was entered in accordance with that decision. And the learned referee held as a conclusion of law that the questions presented to the court on or about the 22d of October, 1874, in the action, wherein Eloise Gedney and Gilbert Gedney were plaintiffs and Laurent J. Tonnele, father of the plaintiff herein, and others were defendants, involved the validity of the whole scheme of the testator, John Tonnele, as affected by the validity of the trusts he attempted to create with regard to all the shares of his children and grandchildren, and that such questions were properly within the equity jurisdiction of the said court; that the interests alleged by the plaintiff in the present action to have been created by the will of John Tonnele, deceased, were represented by the infant parties to the said suit; that the judgment referred to is an adjudication binding upon the parties to the action; that the plaintiff in this action has no right, title, or interest whatsoever in and to the premises described; and directing judgment, therefore, dismissing the complaint. Judgment was entered upon this decision, and from that judgment the plaintiff appeals.

The learned referee did not pass upon the question of the validity of the trust created by the will determining the question solely upon the binding force of the judgment of 1877. There are therefore two questions presented: First, whether the judgment entered in the action in 1877 is an adjudication as to the validity of this will that is binding upon the plaintiff; and, second, if not such an adjudication, whether this will is void as a violation of the statute. I will first discuss the question as to the binding force of the adjudication of the action in the Supreme Court brought in the year 1874. The judgment roll in that action was introduced in evidence. The complaint therein alleges the death of John Tonnele on the 26th of November, 1852, seised and possessed of the real property in question and other real property in the state of New York; that he left a last will and testament, which was duly admitted to probate; that the testator's widow qualified as executrix and subsequently died; that the other executors failed to qualify, and that they subsequently died; that since the death of the testator two of his children mentioned in his will died without issue; that three of his daughters have married and had children who were infants and who were made parties defendant; that the devise in the fifth section of said will of the remainder of the real estate whereof the testator died seised is contrary to the statute in such case made and provided; wherefore the plaintiffs demand that the court shall adjudge and declare the true intent and meaning of the said last will and testament hereinbefore set forth, and whether any, and, if any, what, provisions therein contained are contrary to the laws of the state of New York, and that such portions may be declared null and void; and that the plaintiffs may have such other or further relief, or both, as shall be agreeable to equity. To this complaint an answer was interposed by several of the infant defendants, the grandchildren of John Tonnele, by guardians ad litem, denying that the devise in the fifth section of the will was void; alleged that each of the then living grandchildren of the testator was entitled to a remainder expectant upon the death

of the life tenant; and prayed that their several rights and interests under and by virtue of said will may be confirmed and established by the judgment of the court. One infant defendant answered by his guardian ad litem in the form of a general answer for an infant defendant, alleging that he was a stranger to all and singular the matters and things in the complaint contained. The defendant, Laurent J. Tonnele, the father of the plaintiff in this action, appeared in the action, but interposed no answer and did not defend the action, but in effect consented to a judgment as demanded. Upon the pleadings the court found the facts, and found as conclusions of law: First, that the provisions of said will creating and declaring trusts of the estate of the testator, suspends the power of alienation beyond the period the statute permits, and is therefore void; second, that upon the death of the said testator his children then surviving became seised of his land and hereditaments in the state of New York in equal shares, as tenants in common, subject to the life estate of their mother, Cecile Tonnele; third, that the defendant, Laurent J. Tonnele, and other children of the testator are tenants in common in fee simple absolute of the premises described in the complaint, the interest of the said Laurent J. Tonnele being subject to the inchoate right of dower of his wife, Mary B. Tonnele. Upon this decision judgment was entered. It adjudged that the provisions of the will were void, and that the children of the testator living at the time of his death became seised of all lands and hereditaments in equal shares as tenants in common; that the testator's children who were parties defendant were tenants in common in fee simple absolute of the premises described in the complaint. It awarded costs to all the parties with extra allowances, provided that the costs be made a general charge and lien upon the lands, tenements, and hereditaments described in the complaint; that the plaintiff have judgment and execution against the defendants for the costs and allowances awarded to her; that the various defendants have judgment and execution against the plaintiff for the costs awarded to them; that the infant defendants have judgment and execution against the plaintiff and the adult defendants for the costs and allowances awarded to them; that out of the moneys collected or paid under and by virtue of the judgment there be paid to the attorneys for the several parties the costs awarded; that on receiving the moneys collected by virtue of the judgment it should be the duty of the attorney or attorneys receiving the same to divide the same without delay among the attorneys entitled thereto; and the clerk of the city and county of New York is directed to docket the amounts for which judgment and execution are awarded as a judgment against the parties against whom the same are hereby made a judgment, and to discharge said judgments of record as a charge or lien against any of the said parties on receiving a satisfaction piece. The referee has determined that this judgment is an adjudication binding upon the plaintiff, who was then unborn, that the provisions of the will which devised to him a remainder in a portion of this property is void, and stands as a bar to his claiming title to the property so devised to him.

The plaintiff has never had his day in court. Before he was born,

by a judgment in an action to which neither he nor any one representing him was a party, where the interests of his father and himself were antagonistic, and to get an interest in the property the father in effect consented that plaintiff should be despoiled, without provision to protect his rights, and in which no relief was asked for except an adjudication that a will which devised real property to him be declared void, his property has been taken from him, and those who have got it seek to have that judgment stand as a bar against his recovery what belongs to him.

In the first place, it is quite pertinent to inquire as to the jurisdiction of the court to entertain such an action. Under the will of John Tonnele, if valid, the fee of this real property vested in his trustees therein appointed. 1 Rev. St. (1st Ed.) p. 729, pt. 2, c. 1, tit. 2, § 60. Upon the death of the trustees, under the statute, the trust vested in the Supreme Court, to be exercised by it or by trustees appointed by it. 1 Rev. St. (1st Ed.) p. 730, pt. 2, c. 1, tit. 2, § 68. In this action no trustee was before the court, and the court was not asked in any way to execute a trust or to protect the title or rights of those interested in the property as beneficiaries or remaindermen. Whatever right a trustee when appointed would have to this property in trust for unborn descendants of the testator, was neither recognized, protected, nor respected. The infant defendants, who were then entitled under the will of the testator to a remainder in his estate, could not in any way represent the rights of the plaintiff, in whom there vested a remainder upon his birth. Whatever interest in the estate these infant defendants might have had in so far as it affected the plaintiff's share of the testator's property became divested upon the plaintiff's birth, and the judgment, therefore, could no more bind him than a conveyance of their interest would have affected him. Nowhere in the pleadings in the action is there any demand for a judgment that would affect the unborn descendants of the testator, and no provision in the judgment directly adjudicating as to their rights. The determination of the court was an announcement of its opinion of the legal effect of the will in an action in which nobody sought any affirmative relief in relation to the property, and an action to which those in whom the fee of the property had vested, namely, the trustees under the will, were not parties, in which they were not represented in any way, and in which no judgment was asked for or granted affecting their title to the property, or the title of unborn infants for whose benefit they held it.

It is clear, I think, that no cause of action was alleged in the complaint in the action in which this judgment was entered, and the court had no jurisdiction in that action to determine as to the validity of the trust contained in the will. No right to this real property was alleged, and no relief in relation to it is asked. All that the court was asked to do was to generally adjudicate as to the validity of the will, and the allegation that the trust was void took from the court the only ground in which it had ever exercised jurisdiction, viz., to enforce a trust. Such jurisdiction has always been disclaimed by the courts of this state. The question of jurisdiction of a court of equity in relation to wills disposing of real property was considered by the Court of

Appeals in Anderson v. Anderson, 112 N. Y. 104, 19 N. E. 427, 2 L. R. A. 175, and in determining that case, after a review of the authorities, the court said:

"These are all the cases cited by counsel upon the question as to the inherent jurisdiction of a court of equity in this state over the subject-matter of an action like this. We do not see that they support the contention that such a jurisdiction exists. On the contrary, the jurisdiction of courts of equity in considering doubtful or disputed clauses in a will has been held with entire uniformity by the courts of this state to result from its jurisdiction over trusts, and that exists only when the court is moved on behalf of an executor, trustee, or cestui que trust, and to enforce a correct administration of the power conferred by the will."

In Matter of Mount's Will, 185 N. Y. 162, 77 N. E. 999, the court, in speaking of the authority vested in the surrogate by the Code of Civil Procedure to construe wills, said:

"The intention of the Code provision was to confer upon the surrogate power and jurisdiction similar to that theretofore possessed by the courts of equity. In one respect it is probably a little broader, because a court of equity would not entertain an action brought by one claiming the legal title in unqualified hostility to the will, while the Code provision requires the surrogate to determine the validity of the testamentary disposition when challenged, as well as the construction of the will."

In Chipman v. Montgomery, 63 N. Y. 221, it was expressly held that a court of equity, at the suit of a person claiming as heir at law of a decedent, would not entertain an action by such heir at law to have declared void a trust contained in the will, the court saying:

"The plaintiffs cannot entitle themselves to the intervention of the instrument while occupying such a position. They cannot, for the purpose of giving the court jurisdiction, allege a trust within the general powers of the court, and in the same breath deny the legal existence of the same trust and insist upon legal rights inconsistent with it. The trust being invalid, the court cannot entertain jurisdiction of the other matters. If the trust attempted to be created by the residuary clause of the will is legal, then there is no need of a judicial construction of the instrument, for no question is made as to its meaning or the rights of the parties. If it is invalid as in contravention of the statutes against perpetuities, then the rights of the parties are purely legal and to be enforced as such. The plaintiffs, to entitle themselves to the action and judgment of the court, either in the execution of the testamentary trust or in the construction of the will and the adjustment of the rights of the parties under it, must elect to take in subordination to the will and under the trust as created by the testator, and establish their rights as cestuis que trust. They cannot have the benefit of a trust which they repudiate, merely to give them a standing in court."

See, also, Monarque v. Monarque, 80 N. Y. 320. The court of equity to which the appeal was made in that action had, therefore, no jurisdiction to determine any question presented to it as affecting the parties to the action, and it had much less jurisdiction, it seems to me, to determine the rights of the parties unborn, to whom was devised a remainder in fee simple, not before the court, and where the trustees in whom the title to the property had vested, or no successor to such trustees, were before the court to protect the rights of those for whose benefit the legal title to the property had vested in the trustees.

The referee below relied upon Kent v. Church of St. Michael, 136 N. Y. 10, 32 N. E. 704, 18 L. R. A. 331, 32 Am. St. Rep. 693, and the respondents rely on that case to sustain his judgment. The decision

in that case presented a different question, and is rather an authority
for the appellants. The action there commenced was to compel per-
sons in whose name stood the record title of certain property to ex-
ecute a deed of the property which had been conveyed to their testator,
the deed of which had been lost. The grantor of that deed had died
leaving a will by which she devised to trustees all her real estate to be
by them divided into three equal parts, directing them to pay the in-
come of one part to each of her three children during the lives of her
children respectively, and after the death of any child to pay over
and divide the said share to and among her children then surviving
and the lawful issue of any child or children who should have died
leaving issue in equal portions per stirpes. The plaintiffs in an ac-
tion in which they made defendants the trustees under the will of the
grantor, her three children and only heirs, and her grandchildren who
were infants, had alleged these facts and asked that the defendants
execute and deliver to the plaintiffs a good and sufficient deed so as
to invest and confirm the titles to the land absolutely in them as the
representatives of the estate of Kent, the grantee. A special guardian
was appointed for the grandchildren defendants, the facts were proved,
and judgment was entered pursuant to the prayer of the complaint.
In compliance with the judgment the adult defendants, which included
the trustees and the infants by their special guardian, executed a deed
of the land to the plaintiffs, and the question was whether the trus-
tees of Kent thereby acquired a good title to the property. It will be
noticed that under this will the trustees of the grantor of the deed
had the legal title to the property in trust. The action was com-
menced to compel them to execute a deed of the property of which
they were the legal owners, but in which the equitable title was in
the plaintiffs. All parties interested who were then alive were made
parties to that action. A court of equity had jurisdiction to decree that
the owners of the record title of real property, the equitable title of
which was in another, should convey the legal title, and making the
owners in whom the legal title had vested a party, namely, the trustees,
and all others who were interested as the cestuis que trustent. And
as the court said: "Therefore the judgment against the trustees and
heirs of Mrs. Stewart was in a proper action and proper forum, and
the question is whether it will bind the after-born grandchildren, if any,
of Mrs. Stewart"—and after saying that the trustees, children and
grandchildren of Mrs. Stewart could not cut off or affect the title in
the land of unborn grandchildren by any conveyance in pais, and that if
the title to this land had actually been devolved under the will of
Mrs. Stewart, and an action were brought to partition it, or to foreclose
a mortgage upon it, or in some other way to change or extinguish the
title, it would be the duty of the court to protect the rights of un-
born grandchildren by setting apart land, or the proceeds of the land,
to represent in some form their interests, held that where an estate
is vested in persons living, subject only to the contingency that per-
sons may be born who will have an interest therein, the living owners
of the estate, for all purposes of any litigation in reference thereto and
affecting the jurisdiction of the courts to deal with the same, represent

the whole estate and stand not only for themselves, but also for the persons unborn. That this is a rule of convenience, and almost of necessity. That the rights of persons unborn are sufficiently cared for, if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place and are secured in some way for such persons. This was said as preliminary to the discussion of the question determined, viz., that the land did not pass under the will of Mrs. Stewart; that all that the plaintiffs in that case asked was a judgment confirming the title to the land which she had conveyed to Mr. Kent; that the living parties defendant in that case were all opposed in interest to the plaintiffs, and the grandchildren belonged to and represented the class to which the unborn persons would belong. In such a case it is safe to permit the living to represent the unborn, and the unborn must be bound by the judgment confirming the title.

It seems to me that that case is an authority for the plaintiff. Here the court had no jurisdiction to deliver any judgment, merely determining a will was void, and the sole object of the action was to procure such a determination. The father of this unborn plaintiff would secure under such a judgment absolute title to the property, cutting off his children for his own benefit. The other grandchildren of the testator would have no possible interest in protecting the claim of the plaintiff, while the trustees of the estate in whom was vested the title to the property were not parties to the action, and no one was there to protect their interest or the interest of those for whom they held the estate in trust. The action was not brought to enforce the right of the plaintiff as against the trustees of the estate and the persons whom they represented; there was no provision in the judgment protecting either the estate or the unborn children who would be entitled to the property upon the death of the life tenant; and this judgment was in an action over which a court of equity had no jurisdiction to render any judgment.

If the court had jurisdiction to determine this question in a proper action with the proper parties before it, it seems to me that there could be no judgment binding upon unborn children without the presence of a representative of the trust. By the will a trust was created during the lifetime of the testator's children, and upon the death of his widow title to all the testator's property vested in the trustees. Such trustees became the owners of the property, and held it for the children of the beneficiary for life in whom a remainder had vested or would vest upon the birth of those born after the trust became established. These trustees died, and under 1 Rev. St. (1st Ed.) p. 730, pt. 2, c. 1, tit. 2, § 68, the trust vested in the Supreme Court, with all the powers and duties of the original trustees to be executed by some one appointed for that purpose under the direction of the court. A reference to the revisor's notes in relation to this section shows that the intention was simply to change the rule so that the property subject to the trust should not descend to the personal representatives or heirs at law of a deceased trustee, but that on the death of the trustees the trust estate would vest in the Supreme Court to execute the trust by a person appointed for that purpose under the direction of the court. It was for the en-

forcement of the trust that the estate vested in the Supreme Court, not for its destruction, and if there was no trust nothing vested in the court. The fact that the Supreme Court had vested in it a trust which it was directed by the statute to enforce by a person to be appointed by it and under its direction did not place it in any different relation to the trust than if the Supreme Court had, under the general authority conferred upon it, appointed a substituted trustee. In no sense can it be said that the owner of the property was before the court, or that the court could by a judgment bind those who subsequently came into being and who would then become entitled to a vested remainder, where the only authority of the court over the trust was to enforce it.

As to the remaining question, as to whether this whole trust was void, I am equally clear that it was a valid trust. As in all cases in the construction of a will, the first question is to ascertain the intent of the testator, and that intent I believe clearly appears. The testator here gave to his wife a life estate in all of this property. Upon her death the property was to be divided among his eight children equally, in such manner that "each child shall receive only the net rents, income and profits of his or her share during her life, and at the death of each child his or her share shall go to and vest in his or her lawful issue." The methods by which this scheme is to be carried into effect are provided for in the seventh clause of the will. By that clause the testator appointed his executors to be trustees of all his property given or devised to any one of his children during the life of such child. There was here provided a limit for the continuance of the trust. The widow had a life estate irrespective of the trust. Upon the termination of that life estate the property was divided into eight parts, and one part was then devised to the trustees to hold during the life of each child, and immediately upon the death of that child the remainder vested in his issue, and in default of issue in the issue of his other children. Nothing, it seems to me, can be clearer than that this was the intent of the testator, and that such a trust is valid is settled. Matter of Mount's Will, 185 N. Y. 162, 77 N. E. 999, and cases cited. He then prescribes the powers of the trustees. He says the trustees should have full power, not as an extension of the estate which he had devised to them, but during that period, to retain all such property in their hands unsold and undivided until after the year 1867. And this was coupled with full power to the trustees to sell and convey all and any part of his real estate, and to invest his personal estate and the proceeds of the sale of such real estate as they shall deem best. Whatever may be said as to the construction to be given to permissive words when it shall be necessary to carry out the intent of the testator that they should be considered mandatory, a mere permission has never been considered to be mandatory when the result would be to change the clearly expressed intention of the testator and to render void a carefully prepared scheme as to the disposition of his estate. What the testator clearly meant was that in case this trust should last until 1868 his executors should not be compelled before that time to sell any of his real estate. The provision which says that his executors shall have power to retain his property until the year 1868 is coupled with a power "to sell and convey all or

any part of my real estate" as may seem to them most for the interest and advantage of my children, and does not prevent the alienation of the estate for a moment. In addition, it shall be noticed that this power never became effective for any purpose. The widow was given a life interest in the property, and it was only upon her death that any title passed to the trustees. She did not die until January, 1868, so under no circumstances could the trustees have sold the property until after the period named by the testator had expired. I am well aware of the rule that, in considering the validity of a disposition of real property under which an attempt is made to restrain alienation, the effect is to be considered as if the alienation was restrained for the longest period contemplated. But here, as the estate did not vest in the trustees until after this period, there was and never could be any restraint upon their power of alienation; and therefore the clause as it stands, even though it was mandatory, could have no effect upon the right to sell or convey the property. I also think that if this clause was void it would not affect the trust, because without it the trust was complete. It would commence only upon the death of the widow, and could last only during the life of each child, for it is expressly provided that upon the death of each child the share of that child should go at once to its issue. The power given to the executors as to the management of the estate was clearly conditioned upon the continued exercise of that power only during the continuance of the trust. Upon no possible construction of this will can it be held that the trust could continue whether the executors sold or did not sell the property beyond the life of the widow and each child. The absolute title to this property with power to convey would necessarily vest in the issue of each child immediately upon the death of that child after the death of the widow; and whether the trustees had or had not a power of sale that extended beyond the life of the widow and a child, or whether the trustees were prevented from exercising the power of sale until after the death of the widow and a child, there was nothing in the will that postponed the absolute vesting of the share of each child immediately upon the death of the child, the widow being then deceased. In no aspect of the case, therefore, can it be said that any of the provisions of this will tied up the share of any child for more than two lives in being. I am satisfied, therefore, that this adjudication was not binding upon the plaintiff, and that the will was entirely valid.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN, J., concur.

HOUGHTON, J. (dissenting). I think the judgment in Gedney v. Tonnele, whether it properly or improperly construed the will of John Tonnele, deceased, is binding on this plaintiff, although he was unborn at the time it was rendered. While both the complaint and the judgment in that action are somewhat inartistic, it is fair to say that the complaint asked construction, and the judgment in fact construed the trust provisions of the will. The estoppel of a former judgment extends to those matters which are comprehended and in-

volved in the thing decided, as well as to those which were expressly litigated and determined. Pray v. Hegeman, 98 N. Y. 351. A construction of the will was necessarily involved in reaching any conclusion, and it is of no importance whether the conclusion reached was right or wrong.

That judgment was not collusive, and the guardian ad litem representing the infants occupying the same relation to the will and trust estate which plaintiff when born occupied, and thus having a common interest with him, raised practically the same questions in behalf of the validity of the will and trust thereunder which plaintiff now raises in the present action. The guardian ad litem by his brief then urged upon the court that the will should be construed as "a devise of each share to one of testator's children for life, with a remainder to his issue," and that the provision as to not selling before 1867 was permissive and not mandatory. These are the only grounds upon which plaintiff now stands, or upon which he can stand, to uphold the will.

I do not understand that the principle upon which after-born·children are bound as to their property rights by a judgment rendered prior to their birth depends upon whether the person through whom they claim himself took a position in the litigation friendly to their interests. A judgment may be binding on those subsequently born, as I understand it, if there be some party connected with the litigation with a like interest, whose claim in that regard is in good faith pressed upon the court for decision. Such is clearly the conclusion from the reasoning in Downey v. Seib, 185 N. Y. 427, 78 N. E. 66, 8 L. R. A. (N. S.) 49, 113 Am. St. Rep. 926.

In Monarque v. Monarque, 80 N. Y. 320, the judgment invoked as a bar was entered upon consent, and in McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015, it was obtained without any bona fide defense on the part of those with like interest. In both cases the judgments were virtual frauds on after-born children. In the later case of Miller v. Texas & Pacific Railway, 132 U. S. 662, 10 Sup. Ct. 206, 33 L. Ed. 487, where it was held that contingent remaindermen were barred by a decree made before their birth, the court took pains to point out that the controlling feature in McArthur v. Scott was the fact that there had been no real defense to the prior decree relied upon as a bar.

If the action of Gedney v. Tonnele was sufficiently defended by those having an interest in common with the plaintiff, it only remains to be considered whether the court had jurisdiction to render the judgment. The plaintiff, Mrs. Gedney, was a cestui que trust under the apparent trust contained in the will. The only qualifying trustee had died, and the trust was without a trustee. The testator left real property apparently affected by the trust. In the absence of any trustee, the execution of the trust devolved upon the Supreme Court. That court had inherent power to execute the trust, and might take its execution upon itself, and whatever directions it might make in the course of such execution would be binding on all parties. Kirk v. Kirk, 137 N. Y. 510, 33 N. E. 552; Rogers v. Rogers, 111 N. Y. 228, 18 N. E. 636. It could appoint a new trustee, but it need

not if it did not choose. It made no appointment, and the cestui que trust found real property in which she had a qualified interest, and in which she conceived she had a greater interest, in legal possession of the court and withheld from her by virtue of an apparent trust. Under such circumstances she came into court by action, making all living persons having any possible interest parties, and asked the court to construe the pretended trust by which it held in legal custody the property of her father, the testator, and to say whether or not it was a good trust or a bad one. I think she had a right to do this, and that the court had jurisdiction to pass upon her request. Suppose she had come in by petition and asked the court to make some order respecting the trust, and the court had ordered all interested parties in being before it? Manifestly, under the above authorities, all parties would have been bound by any order thus made. That she came into court by action does not change the situation. If there had been a trustee and he had brought an action as such trustee for the construction of the will, and all parties in being had been made defendants, concededly the judgment rendered would have bound after-born children, for the trustee would have been their representative. The same result would follow if the action had been brought by a cestui que trust and the trustee had been made a party defendant and had joined in the request for a construction of the trust and direction as to his duties thereunder. Pray v. Hegeman, supra.

I do not subscribe to the doctrine that prior to the enactment of section 1866 of the Code of Civil Procedure (which went into effect in 1880, and hence after the judgment in question was rendered) a cestui que trust who was also an heir at law or devisee could not bring an action for the construction of a will to have an apparent trust contained therein declared void. Such an action is properly brought by one who is next of kin when the trust relates to personalty. Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748. Section 1866 of the Code is derived from section 1 of chapter 238, p. 526, of the Laws of 1853. That act provided that the validity of any actual or alleged devise or will of real estate might be determined in like manner as the validity of any deed might be determined. It was expressly held in Read v. Williams, supra, that section 1866 (which is but a paraphrasing of the law of 1853) extended the remedy by equitable action so as to include suits for construction of trusts and devises, brought by heirs claiming adversely to the will. I see no practical difference between the law of 1853 and the section of the Code in respect to the right to bring the action. There was no reason for enacting the law unless it related to heirs and devisees.

The settling by statute of the right to bring an action to construe a will and determine the validity of a devise of real property could only be in behalf of devisees and heirs who could take title except for the provisions of the will. Trustees already had the undisputed right to bring an action for the construction of the will under which they were acting, and to ask direction as to their conduct. Hawley v. James, 5 Paige, Ch. 318, 488. There was no occasion, therefore,

to enact a law in behalf of trustees, and the law of 1853 must have related to heirs at law and devisees who would take if the trust were swept aside. The dictum construing the act of 1853 in Bailey v. Briggs, 56 N. Y. 415, as giving a right of action only for the establishment of disputed wills, and not such a right to the devisee or heir to construe the provisions of a will, was expressly repudiated by the decision in Anderson v. Anderson, 112 N. Y. 104, 19 N. E. 427, 2 L. R. A. 175.

Kalish v. Kalish, 45 App. Div. 528, 61 N. Y. Supp. 448, held that an heir at law claiming in hostility to the will and not included in its trust provisions could not maintain an action to declare the trust void. The Court of Appeals affirmed the judgment (166 N. Y. 368, 59 N. E. 917), but upon other grounds, and expressly held that an heir at law could maintain such an action (page 371).

Wager v. Wager, 89 N. Y. 161, and Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420, and Anderson v. Anderson, supra, and kindred cases, are not to the contrary. Each of these decisions will be found to turn on points other than the broad principle that an heir or devisee who would take if the alleged trust were void had no right to bring an action in equity to declare the trust void. In most of them the action was by a grantee of some devisee under the will who wanted his title confirmed because of possible future claims. Surely in the absence of objection an heir or devisee whose title was cut off by an alleged trust could bring such an action, and if the court entertained it the judgment which it rendered would be within its jurisdiction. With respect to a cestui que trust, however, which Mrs. Gedney was, even though an heir, there never was any question of the right to bring such an action. The books are full of actions brought by such plaintiffs.

Mrs. Gedney could not induce the trustee to bring the action nor make him a party defendant to one brought by herself, because no trustee existed except the court itself in which she must bring her action if she brought any at all. She was a cestui que trust, and being an heir at law also did not disqualify her, and she had the right to bring the action which she did, and the court had jurisdiction to entertain it, and plaintiff's rights were sufficiently presented to the court by parties having a common interest with him, and were properly defended, and the judgment rendered construed the will and is binding upon him, and therefore conclusive of his claims in the present action.

I therefore vote to affirm the judgment.

LAUGHLIN, J., concurs.