SWAIN ET AL. *v.* BOWERS ET AL.

[No. 12,947. Filed November 15, 1927. Rehearing denied January 10, 1928. Transfer denied April 26, 1930.]

*Wilbur E. Branyan, Fred H. Bowers, Milo N. Feightner, Lee M. Bowers* and *John R. Browne,* for appellants.

*Condo & Batton, O. F. Rhodes* and *Rhodes & Rhodes,* for appellees.

McMahan, J.—This is an action by Sarah Swain, Georgiana Fulton, Earl Bumgartner, Homer Bumgartner, Aubrey Fosnaugh, and June Fosnaugh to have the last will and testament of B. Elizabeth Miller declared void. The first four named plaintiffs are brothers and sisters of the testatrix, while the last two are the children of a deceased sister. The complaint alleges that the testatrix died the owner of personal property worth in excess of $100,000, and that, in the absence of a will, these plaintiffs, as heirs, would have inherited all of the property of which the testatrix died the owner. The court sustained a demurrer to the complaint, hence this appeal.

The will, in so far as the same is material, is as follows:

"Item 2. I devise and bequeath all of my estate, both real and personal of any and every kind, wheresoever located, unto the First National Bank of Peru, Indiana, in trust with instructions that it discharge the trust herein created as follows:

"First. That the First National Bank of Peru, Indiana, trustee herein, shall and is hereby authorized and empowered to convert all of my estate into money or approved and solvent stocks or bonds when and as it deems best.

"Second. Said trustee shall maintain the principal of my estate intact and shall keep the same invested in its name in approved and solvent securities, stocks and bonds.

"Third. That said trustee shall divide the principal of my estate, after paying all debts thereof, into two equal parts and shall stand possessed of each of said parts in trust as hereinafter provided.

"Fourth. It is my will that the *cestui que trust* of one of said equal parts shall be the grandchildren of my said deceased husband, Schuyler C. Miller, and their issue if. any be dead, namely the children begotten by the two

sons of my said deceased husband, C. Kenneth Miller and C. Merrill Miller and their issue if any be dead. Said grandchildren shall each have an equal interest in said fund and trust estate. It is my intention that this provision of my will shall be applicable to any and all children begotten by the said C. Kenneth Miller, and C. Merrill Miller at any time, either before or after my death.

"Fifth. It is my will that the *cestui que trust* of said other equal part shall be the children begotten by or born to my brothers and sisters and their issue if any be dead, the same being the children of Sarah Swain, Georgiana Fulton, May Fosnaugh, deceased, Earl Bumgartner and Omer Bumgartner and their issue if any be dead. Said children of my said brothers and sisters shall each have an equal interest in said fund and trust estate. It is my intention that this provision of my will shall be applicable to any and all children begotten by or born to any of my said brothers or sisters, either before or after my death.

"Item 3. It is my will and I hereby authorize and instruct that The First National Bank of Peru, Indiana, trustee herein, shall deal with all *cestui que trust* during their minority as is best for their interest, especially requesting that it encourage and assist all those who desire to pursue legitimate education, and I authorize it to pay to any of the *cestui que trust* during their minority such sums out of the earnings of the trust estate as their best interest may require. However, it shall keep an accurate and complete record of all sums paid to each *cestui que trust* and at the termination of the trust herein created, as hereinafter provided, all sums paid shall be equalized.

"Item 4. When and as each of the *cestui que trust* under the terms of this will, reach the majority or become the age of twenty-one (21) years, providing they are not under mental disability, I instruct that said

trustee shall render an accounting to them and shall pay to each one upon said event, three-fourths (¾) of the principal of said estate to which he is entitled as may be then determined, and upon the final determination by said trustee that no more children can be born to either the sons of my deceased husband or to any of my brothers or sisters, then and in that event this trust estate shall terminate and said trustee shall account to each *cestue que trust* for his entire interest in my estate, as he reaches the age of twenty-one (21) years, and is not under mental disability.

"Item 5. I authorize and instruct said trustee, when it deems it necessary to contribute of the income a reasonable amount for support of any of the *cestui que trust,* and to pay the same either to the parents if it is satisfied that the children will receive the benefits thereof, or may pay direct to the persons or institutions furnishing the necessary merchandise, schooling or other things of value.

"Item 6. In the event of the death of any of the *cestui que trust* herein without issue or their descendants, the interest or share of such decedent *cestue que trust* or their descendant shall go to and become a part of the one equal part in which such decedent *cestui que trust* was interested and the same shall be administered by the trustee herein under all the terms and conditions of this will for the benefit of the other and remaining *cestui que trust* or their descendants. It being my intention that in such event the first cousins or their descendants, of such deceased *cestui que trust* shall take under the same terms the share which he would have taken had he survived."

Item 7 requires the trustee to keep an accurate account, which shall be open to the interested parties or their parents. Item 8 gave the trustee power to appoint necessary agents, attorneys in fact, or trustees, in order

to successfully manage the trust, and Item 9 appoints the First National Bank of Peru as executor.

It is to be noted that provision is made for two separate and distinct trusts, the *cestui que trustent* of one being the grandchildren of the deceased husband, while the *cestui que trustent* of the other are the children of the brothers and sisters of the testatrix.

Sections 12171 and 12172 Burns 1926 (§§6057, 6058 R. S. 1881), are as follows: (§12171) "No limitation or condition shall suspend the absolute ownership of personal property longer than till the termination of lives in being at the time of the execution of the instrument containing such limitation or condition, or, if in a will, of lives in being at the death of the testator." (§12172) "A provision for the accumulation of interest or income of money or other personal property by any conveyance or will shall be void, except as follows: First. If the accumulation be directed to commence from the date of the instrument or the death of the person executing the same, it may be for the benefit of minors then in being or in being at such death, and to terminate at the expiration of their minority. Second. If the accumulation be directed to commence at any period subsequent to the death of the person executing such instrument, it may be within the time allowed in the first section of this act for the suspension of ownership, and at some time during the minority of the persons for whose benefit it is intended, and must terminate at the expiration of their minority. But a provision for accumulation beyond minority of such persons shall be void only as respects the time beyond such minority."

Appellants contend that the will is void for the following reasons: (1) It suspends the absolute ownership of personal property longer than the termination of lives in being at the death of the testatrix; (2) it provides for the accumulation of interest, income of money and other

personal property for a time longer than lives in being at the death of the testatrix; (3) it provides for the accumulation of interest, income of money and other personal property for minors in being at the death of the testatrix, said accumulations not to terminate with the minority of the minors; (4) it provides for the accumulation of interest, income of money and other personal property to begin after the death of the testatrix and payable to minors, such accumulations not to terminate with the minority of the minors or at any time during their minority; (5) it provides for the accumulation of interest, etc., to begin at the death of the testatrix, to be held in trust for minors living at the death of the testatrix, which trust does not terminate with the minority of such minors, nor with the end of lives in being at the death of the testatrix; and (6) the shares of the legatees cannot be ascertained from the provisions of the will.

In support of these contentions, appellants first call attention to the provisions in the fourth and fifth paragraphs of Item 2, which provide that the trusts shall apply to the children of the named persons begotten either before or after the death of the testatrix, and insist that these provisions are in direct conflict with §12171, *supra*, in that the clause in the fourth paragraph which provides that one-half of the property shall be held by the trustee for the benefit of the children of Kenneth and Merrill Miller, "and their issue if any be dead," and which is followed by the expressed intention of the testatrix that this provision shall be applicable to any and all children begotten by said parties "either before or after" the death of the testatrix. Appellants also insist that said provisions render the time when the trust ends uncertain, and that they cannot be reconciled with the provision of the statute which provides that no limitation or condition shall suspend the absolute ownership of personal property longer than till the termination

of lives in being at the time of the execution of the instrument containing such limitation or condition, or, if in a will, of lives in being at the death of the testatrix.

The provisions creating the two trusts are so nearly alike that both must stand or fall together. The trust relating to the children of Kenneth and Merrill Miller is measured and limited by the lives of said last-named parties. The will specifically names the *cestui que trustent* of that trust as the children "begotten" by said two sons of the deceased husband, and that period is measured by the life of the survivor of said two sons.

The *cestui que trustent* of the other trust are in paragraph five designated as the "children begotten by or born to" the brothers and sisters of the testatrix.

It is to be noted that the testatrix, in designating those who shall be the beneficiaries of the trust in favor of the children of the two sons of the deceased husband, uses the word "begotten," a word chiefly and peculiarly applicable to a father, while, in the next paragraph of the will, when she designates the beneficiaries of the other trust involving brothers and sisters, she uses the words "begotten by or born to," thus indicating that she had in mind that "begotten by" was applicable to her brothers and that "born to" was more applicable to her sisters. By the use of the words "begotten by or born to," she clearly indicates that the time by which the trust is to be measured is the time within which children may be begotten by her brothers, and within which children may be born to her sisters. When that time ends, the estate becomes vested in the beneficiaries. A child may be begotten by a brother, though born to the mother after the death of the father. A child begotten by one of the sons of the deceased husband, or by one of the brothers of the testatrix, though *en ventre sa mere* would be a beneficiary under the will now under consideration.

"The rule against perpetuities has to do with future estates which, by possibility, may not become vested within the time prescribed by law; it applies only to future estates which are contingent, and has no application to vested estates." *In re Lilley* (1922), 272 Pa. St. 143, 116 Atl. 392, 28 A. L. R. 366.

It is a well-established rule of law that an infant is in being from the time of conception for the purpose of taking any estate which is for its benefit, whether by devise or under the statute of descent, provided it be born alive, and after such a period of foetal existence that its continuance in life might be reasonably expected. *Harper* v. *Archer* (1845), 12 Miss. 99, 43 Am. Dec. 473; *Nelson* v. *Iverson* (1853), 24 Ala. 9, 60 Am. Dec. 442; *Morrow* v. *Scott* (1849), 7 Ga. 535; *Botsford* v. *O'Conner* (1870), 57 Ill. 72.

Blackstone states the rule in relation to posthumous children as follows: "An infant in *ventre sa mere*, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitations, as if it were then actually born." 1 Bl. Comm. 130, p. 69.

In *Doe* v. *Clarke* (1795), 2 H. Bl. (Eng.) 399, it was held that an infant *en ventre sa mere* is considered as born for all purposes which are for its benefit. In *Hall* v. *Hancock* (1834), 32 Mass. (15 Pick.) 255, 26 Am. Dec. 598, the court said: "A child will be considered in being, from conception to the time of its birth, in all cases where it will be for the benefit of such child to be so considered."

A bequest to grandchildren living at the time of the testator's death was held to include a grandchild *en ventre* at the testator's death. *Randolph* v. *Randolph*

(1885), 40 N. J. Eq. 73. "For an unborn child, after conception, if it is subsequently born alive and so far advanced to maturity as to be capable of living, is considered as *in esse* from the time of its conception where it is for the benefit of the child that it should be so considered." *Home* v. *Van Schaick* (1848), 3 Barb. Ch. (N. Y.) 488.

The rule of perpetuities is satisfied by the vesting of the right to the estate within the limitation of the rule, though the beneficiaries may not then be known. Time required after the vesting of the right, for the ascertainment of the persons rightfully entitled to the property, does not militate against the validity of the trust. *Becker* v. *Chester* (1902), 115 Wis. 90, 91 N. W. 87. See, also, *Lamar* v. *Crosby* (1915), 162 Ky. 320, 172 S. W. 693, Ann. Cas. 1916E 1033; *Scott* v. *Turner* (1925), 137 Miss. 636, 102 So. 467; *Fuller* v. *Gale* (1918), 78 N. H. 544, 103 Atl. 308; *Culp* v. *Lee* (1891), 109 N. C. 675, 14 S. E. 74; *Clark* v. *Benton* (1899), 124 N. C. 197, 32 S. E. 555.

And our statute of descent recognizes this rule in providing that "Posthumous children shall inherit equally with those born before the death of the ancestor." §3325 Burns 1926, §2467 R. S. 1881. We hold the posthumous children, if any are born to Kenneth or Merrill Miller, or to a brother of the testatrix, will be beneficiaries of the several trusts, the same as if they had been born prior to the death of their father, and that, upon the death of the persons by whose lives the trusts are measured, the children of such persons, theretofore born, together with any posthumous child or children, take a vested interest in the trust property.

Appellants next call attention to the provision in Item 4, which provides for the payment to each *cestui que trust* of three-fourths of its share upon reaching the age of 21, and providing that the bal-

ance is to be held by the trustee until it determines no more children can be born, as they say, to the "*cestui que trust,*" and contend that the possibility of issue of the *cestui que trustent* ties up the property until the death of the last *cestui que trust.* This contention is not tenable. The duration of the trust is not measured by the possibility of children being begotten by or born to a *cestue que trust.* The one trust is measured by the life of the survivor of the two sons of the deceased husband, and the other trust is measured by the life of the last survivor of the brothers and sisters of the testatrix, who are named in the will. The title to the property held by the trustee under the first trust will vest in the beneficiaries immediately upon the death of the son of the deceased husband last dying, while the title to the property held under the second trust will vest upon the death of the last surviving brother or sister of the testatrix. Each trust, being measured by lives in being at the death of the testatrix, is valid. As was said by the court in *Tonnele* v. *Wetmore* (1908), 124 App. Div. 686, 109 N. Y. Supp. 349, in speaking of a somewhat similar situation: "The absolute title to this property with power to convey would necessarily vest in the issue of each child immediately upon the death of that child after the death of the widow; and whether the trustees had or had not a power of sale that extended beyond the life of the widow and a child, or whether the trustees were prevented from exercising the power of sale until after the death of the widow and a child, there was nothing in the will that postponed the absolute vesting of the share of each child immediately upon the death of the child, the widow being then deceased."

We cannot agree with appellants in their contention that the provision in Item 4 which provides that "upon the final determination by said trustee that no more children can be born to either the

sons" of the deceased husband, or to any of the "brothers or sisters" of the testatrix, the trust shall terminate, and the trustee shall account to each *cestui que trust* for his entire interest in the estate, as he reaches the age of 21 years, and is not under mental disability, fixes the duration of either trust for a longer period of time than the lives of any persons in being at the death of the testatrix. It is our duty to uphold and give effect to the will, if possible, without violating any established rules of law. If the language of a will is susceptible of two constructions, one of which would violate a statute or an established rule of law, and the other would sustain the same, the latter construction should be given it, since the law presumes the testatrix did not intend to violate such statute or rule of law. *Vaubel* v. *Lang* (1923), 81 Ind. App. 96, 140 N. E. 69.

A will should be construed so as to prevent intestacy, and all of its provisions should be upheld, if it can be done without doing violence to the intent of the testator, though some of the expressions used are inaccurate or apparently inconsistent. The language of the will should in such cases be subordinated to the plain intent of the testator. *Billings* v. *Deputy* (1925), 85 Ind. App. 248, 146 N. E. 219. Another well-recognized rule is that the intention of the testator, when clearly expressed, must control. *Quilliam* v. *Union Trust Co.* (1924), 194 Ind. 521, 142 N. E. 214.

The will in question is dated March 21, 1925. The testatrix died in July, 1925, and this action was commenced in November, 1925. The complaint alleges that, under the provisions of the will, the beneficiaries of one-half of the property are the defendants Beatrice Bowers, Kenneth Swain, Violet Weber, Floyd Weber, Paul R. Bumgartner, Eugene Bumgartner, George Bumgartner, Ruth Fulton, Wilbur Fulton, and the plaintiffs Aubrey Fosnaugh and June Fosnaugh, all of whom are

minors except Violet Weber, and that the beneficiaries of the other half are Mary J. Miller and Martha J. Miller, minor daughters of Kenneth Miller, and that Merrill Miller has no children. There is no allegation as to who the parents of these children are, or as to their ages other than as just stated. There is no allegation that any of such children were born after the death of the testatrix, and there is no presumption that they were. There being no allegation in the complaint that any party by whose life the trust is to be measured, and there being no suggestion in the briefs that any child has been born since the death of the testatrix who might become a beneficiary of the trust, we will assume that no such child has been born since the death of the testatrix, and that all of the children named in the complaint as beneficiaries were in being and were minors at the time the testatrix died.

Where the general testamentary scheme of the testator can be carried out without transgressing the rule against perpetuities or the statute with respect to restraint of alienation, the provisions of the will carrying out such scheme will be sustained, although there are certain provisions which operate to create an unlawful perpetuity or restraint. The provisions which operate to create the unlawful perpetuity or restraint will be rejected and the other provisions will be given effect. Schouler, Wills (Supp. 6th ed.) §902.

But, as we view it, the provision of Item 4 to the effect that, upon the final determination by the trustee that no more children can be born to the sons of the deceased husband, or to the brothers or sisters of the testatrix, the trust estate should end and the trustee should account to each *cestui que trust* as he reached the age of 21, does not suspend the ownership of the trust property beyond the termination of lives in being at the death of the testatrix. This provision does

not prevent the vesting of title, or extend the time when title shall vest. It does not render the trusts illegal. The most that can be claimed for it is that it postpones the period of enjoyment.

If there be a direct gift to a legatee, a direction for payment at the happening of a certain event does not prevent its vesting, and the personal representative of a legatee dying before the event happened is entitled to receive it at the time the legacy was directed to be paid to the legatee, had he lived. *Matter of Mahan* (1885), 98 N. Y. 372, 376. The Supreme Court of Illinois, in *Mettler* v. *Warner* (1910), 243 Ill. 600, 90 N. E. 1099, 134 Am. St. 388, in discussing this question, said: "The rule against perpetuities has reference to the time within which the title vests and has nothing to do with the postponement of the enjoyment or the duration of the title. An interest which begins within lives in being and twenty-one years thereafter is not within the rule although it may continue beyond the prescribed period. . . . The contention of defendants in error that under the will there is a possibility that the equitable title might not vest in the beneficiaries within the time prescribed by the rule against perpetuities presents a more serious question. The determination of this question depends upon whether the interest of the beneficiaries is a vested remainder or contingent upon their being alive when the time of distribution arrives. The controlling consideration in determining this question is to discover and give effect to the intention of the testator as expressed in the will, if it can be done without contravening the established rules of law. . . . The law favors the vesting of estates, and in cases where the instrument is susceptible of two constructions the law inclines to favor the construction most favorable to the devisee or grantee, rather than the construction that

would be against his interest. . . . Remainders will only be held to be contingent where the intention to create such interest is clearly manifested by the words of the instrument. . . . Where a remainder is devised and the postponement of the enjoyment is for the convenience and benefit of the estate and not for reasons personal to the devisee, the remainder should be held to be vested."

The postponement of the time of payment is not important; that alone will not qualify the absolute character of ownership. The vesting of it is suspended if some period in the future is annexed to the substance of the gift. *Greenland* v. *Waddell* (1889), 116 N. Y. 234, 22 N. E. 367, 15 Am. St. 400. As soon as title vests absolutely, suspension of the absolute ownership ceases. Chaplin, Suspensions of Alienations §387.

"The fact that the gift or devise must open to let in after born children is not inconsistent with the vesting of the estate in interest at the testator's death, though the vesting in possession is deferred to the period of distribution." *Kellett* v. *Shepard* (1891), 139 Ill. 433, 28 N. E. 751, 34 N. E. 254. "An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment." *Scofield* v. *Olcott* (1887), 120 Ill. 362, 11 N. E. 351. If title vested on death of the parties whose lives measured the several trusts, the statute was not offended against. *In re Trevor* (1924), 239 N. Y. 6, 145 N. E. 66. Time of vesting and not time of enjoyment is limited by the statute. See *Melvin* v. *Hoffman* (1921), 290 Mo. 464, 235 S. W. 107; *Hill* v. *Hill* (1921), 106 Nebr. 17, 182 N. W. 578; *Canda* v. *Canda* (1921), 92 N. J. Law 423, 112 Atl. 727, 13 A. L. R. 1029; *Jones* v. *Habersham* (1882), 107 U. S. 174, 27 L. Ed. 401, 2 Sup. Ct. 336; *McCutcheon* v. *Pullman, etc., Bank* (1911), 251 Ill. 550, 96 N. E. 510; *Lembeck* v. *Lembeck* (1907), 73 N. J. Eq. 427, 68 Atl. 337, affirmed in 74 N. J. Eq. 848, 71 Atl. 240; *Bennett* v.

*Bennett* (1922), 92 W. Va. 391, 115 S. E. 436; *O'Hare* v. *Johnston* (1916), 273 Ill. 458, 113 N. E. 127; *Armstrong* v. *Barber* (1909), 239 Ill. 389, 88 N. E. 246.

"The test of alienability of real or personal property is that there are persons in being who can give perfect title. . . . Where there are living parties who have unitedly the entire right of ownership, the statute has no application." *Williams* v. *Montgomery* (1896), 148 N. Y. 519, 43 N. E. 57. There is no suspension of the absolute power of alienation, if all persons having an interest, present and future, can convey a fee simple. If any interest is inalienable, and may remain inalienable for a period longer than permitted by the statute, it is void. The statute is not applicable to any interest that is alienable, though it is a contingent interest, and may remain contingent for a period longer than that permitted by the statute concerning the suspension of the absolute power of alienation. Page, Wills (2nd ed.) §1104.

Each trust in the instant case was in favor of a class and vested in the members of the class upon the death of the persons by whose lives the trust was measured. As was said in *Holmes* v. *Connecticut Trust, etc., Co.* (1918), 92 Conn. 507, 103 Atl. 640, L. R. A. 1918E 368: "A testamentary gift to children born and unborn, of a living parent, is not invalidated by the rule against perpetuities for the reason that one or more of the children may come into existence more than twenty-one years and the period of gestation after the testator's death. If one or more of the children are living at the death of the testator, the gift will be upheld as a gift to a class, vesting in its members living at the testator's death and opening to let in after-born members."

In *Easton* v. *Hall* (1926), 323 Ill. 397, 154 N. E. 216, cited by appellants in support of their contention that the trusts are invalid because the property "may be held

by the trustee for more than twenty-one years and until the trustee determines that no more children will be born to the *cestui que trust*" (our italics), the trust was limited and measured by the life of all the beneficiaries of the trust, which might include the widow of a son who was also a beneficiary. As heretofore stated, neither trust created by the will in the instant case is measured by the lives of beneficiaries. These trusts are measured by the lives of the parents of beneficiaries, that is, by the lives of the sons of the deceased husband, and by the lives of the then living brothers and sisters of the testatrix. A careful reading of that part of the opinion in *Easton* v. *Hall,* *supra,* wherein the court refers to *Quinlan* v. *Wickman* (1908), 233 Ill. 39, 84 N. E. 38, 19 L. R. A. (N. S.) 216; *Moroney* v. *Haas* (1917), 277 Ill. 467, 115 N. E. 648, and *Brown* v. *Wright* (1907), 194 Mass. 540, 80 N. E. 612, will disclose that our conclusion that the trusts now being considered are valid, is, in fact, in harmony with the views of the court as expressed in the Easton case.

The trusts created by the will now under consideration are not trusts for the "accumulation of interest or income of money or other personal property," and are not affected by the provisions of said §12172 Burns 1926. "Accumulation," as used in this statute, is the adding of the interest or income to the principal pursuant to the provision of a deed or will so as to prevent its being expended. *Thorn* v. *DeBreteuil* (1903), 86 App. Div. 405, 83 N. Y. Supp. 849. It implies a withholding and using of the income for the purpose of creating an increased and constantly increasing fund for distribution at a future time. *In re Rogers' Estate* (1896), 179 Pa. 609, 36 Atl. 340. Instead of requiring the accumulation of the income, the testatrix, in Item 3, expressly directed the trustee to deal with the beneficiaries, "during their minority as is best for their interest,

especially requesting that it encourage and assist all those who desire to pursue legitimate education," and she authorized the trustee to pay any beneficiary during minority "such sums out of the earnings of the trust estate as their best interest may require." These provisions for payment are wholly inconsistent with the idea that it was the intention of the testatrix to provide for accumulation of the income from the trust estates for the purpose of creating an increased fund for distribution at a future time.

The demurrer was correctly sustained.

Judgment affirmed.

Dausman, J., absent.