QUILLIAM ET AL. *v.* UNION TRUST COMPANY OF
INDIANAPOLIS ET AL.

[No. 24,551.  Filed January 16, 1924.  Rehearing denied April
24, 1924.]

1. PERPETUITIES.—*Suspending Power of Alienation for Specified Period.—Absolutely Void.—Statute.*—A provision in a will prohibiting alienation of devised real estate for a period of 50 years violates the statutory rule against perpetuities (§3998 Burns 1914, §2962 R. S. 1881), and is absolutely void. p. 528.

2. WILLS.—*Valid and Invalid Provisions.—Rule Stated.*—Where part of a will is valid and part invalid, if the invalid part may be eliminated and the remaining part will carry out the main scheme and intention of the testator and cast his property where he intended it to go, then such invalid part will not be held to destroy the whole will. p. 528.

3. WILLS.—*Estate Devised.—All of Testator's Property.—Statute.*—Under the provisions of §2123 Burns 1914, §2567 R. S. 1881, a bequest of all testator's property, real and personal to a named beneficiary is sufficient to convey a fee-simple in the real estate devised. p. 529.

4. WILLS.—*Construction.—Testator's Intention Governs.—Rules of Construction.*—In construing a will, the testator's intention controls and must be given effect, if that can be determined; when such intention is not clearly expressed and is couched in

ambiguous phraseology so that reasonable differences of opinion may arise, it is the court's duty to apply well-recognized rules of construction in determining such intent. p. 529.

5. WILLS.—*Rules of Construction.—Vesting of Estates.—Early Vesting Favored.*—The law favors the vesting of estates at the earliest possible moment, and, if possible, the courts will construe a will so as to vest the entire estate at the time of testator's death. p. 530.

6. WILLS.—*Construction.—Words of Survivorship.—Presumption.*—Words of survivorship used in a will in disposing of property are presumed to relate to the death of testator rather than the death of the first taker, if they are fairly capable of such interpretation, and where real estate is devised to one, in terms sufficient to give a fee-simple, and a devise over is made, conditioned on the first taker dying without issue, the phrase "dying without issue" is construed to refer to a death in the lifetime of the testator, unless a contrary intention is clearly expressed. p. 530.

7. WILLS.—*Constructions.—"Dying without Issue."—Presumption.*—A will bequeathing to testator's daughter all his real and personal estate "forever," followed by a provision that if the daughter died without issue, then the property that "she may have derived" from his estate, at the time of her death, "shall have descended" to certain nephews and nieces, vested a fee simple in the daughter, the presumption being that the testator referred to a death of his daughter in his lifetime, and this presumption was not overcome by the two sets of words above quoted nor by subsequent provisions of the will as to the management of his property during the time that alienation was prohibited by a clause held invalid because violating the rule against perpetuities. p. 534.

8. PERPETUITIES.—*Wills.—Devise Limited Over on Death Without Issue.—How Construed.—Statutes.*—A devise to testator's daughter and, on her death without issue, to testator's nephews and nieces, if construed to refer generally to a death without issue, that is, either before or after the testator's death, would mean a limitation over after an indefinite failure of issue and, therefore, be void, because of the statute against perpetuities (§3998 Burns 1914, §2962 R. S. 1881), and the daughter would take a fee tail at common law, which is converted by §3994 Burns 1914, §2958 R. S. 1881 into a fee simple. p. 534.

From Marion Circuit Court (A30,061); *Louis B. Ewbank,* Judge.

Action by Essie Delzell Quilliam and others against the Union Trust Company of Indianapolis and others. From a judgment for defendants, the plaintiffs appealed to the Appellate Court. (Transferred to the Supreme Court under §1394, cl. 2, Burns 1914.)   *Affirmed.*

*George W. Galvin,* for appellants.

*John M. Bailey, George H. Young, Charles Remster, Henry H. Hornbrook, Albert P. Smith* and *Paul Y. Davis,* for appellees.

GAUSE, J.—This is an action instituted by the appellants, who are nephews and nieces and descendants of nephews and nieces of Samuel Delzell, deceased, in which appellants seek to quiet their title to certain real estate in Marion county, Indiana, which was owned by said deceased at his death, and to prevent the appellees from interfering with the appellants' rights to said real estate. The appellees are The Union Trust Company of Indianapolis, as executor under the will of Anna D. Hughes, deceased, and the same company as trustee of express trusts created by the will of said Anna D. Hughes. Said Anna D. Hughes was the daughter of said Samuel Delzell. The determination of this cause involves the construction of the will of said Samuel Delzell.

The appellants claim that by the terms of said will, under which they are asserting title, said daughter was given a determinable fee in such real estate, which vested in the nephews and nieces and the descendants of the nephews and nieces of Samuel Delzell upon the death of said daughter without leaving any issue surviving at her death.

The appellees contend, first, that on account of an attempt in said will to suspend the power of alienation of the property therein devised, and the particular wording of the will in that respect, the entire will is

void, and said daughter, being the only heir, took the estate by inheritance; second, if it is not void, that, by the terms of said will, she took a fee-simple estate.

The lower court held the complaint insufficient on the ground that by the will of said Samuel Delzell, a fee-simple estate was devised to the daughter, Anna D. Hughes.

The daughter survived her father, Samuel Delzell, and, before the bringing of this suit, she died without leaving issue surviving her.

The will of said Samuel Delzell was as follows:

"I, Samuel Delzell, of Indianapolis, Indiana, make and publish this my last Will and Testament, hereby revoking all former Wills by me made.

"ITEM 1st: I will and direct that all my just debts and funeral expenses be paid out of the first moneys received from my estate that come into the hands of my executrix.

"ITEM 2: I will and direct that all of my improved real estate in Leavenworth, Kansas, and in Marion County, Indiana, including my farm in Washington township, and my land near Brightwood remain unsold during the lifetime of my daughter, Anna D. Hughes, and during the lifetime of her child or children, should any be born to her, and during the life time of her grandchild or children, or their heirs or descendants, until the expiration of a period of fifty years, after the date of the probate of my will, and at the expiration of said fifty years I will and direct that said property be sold and the proceeds divided among those who, by the terms of this will, will be entitled to it; and further that no rental for more than one year in advance shall be collected for any of said real estate and that any and all payments and receipts for rental for more than one year in advance shall be void. My purpose in prohibiting the sale of the above mentioned real estate for fifty years, is because I believe no better investment can be made, and that no better way could I provide for my beloved daughter, and protect her and her children and grandchildren from want. My unim-

proved real estate in Marion County, Indiana, may be sold by my executrix, and also so much of my land near Brightwood as may be needed for railroad switching purposes; and in the event of my  daughter's death without heirs of her body born to her, then, in this event all of my real estate, improved or unimproved, lying south of the line of latitude of Maryland Street, Indianapolis, whether inside or outside of said city in Marion County, Indiana, may also be sold and the proceeds divided among those at that time entitled to it by the terms of this Will that is entitled to it at the time of such sale.

"ITEM 3: It is my will that for the period of fifty years after the probate of my Will, the sum of fifteen dollars each and every year shall be paid to the managers of Crown Hill Cemetery, of Marion County, Indiana, to provide and pay for a flower bed and for sprinkling and for general care of my burial lot in said cemetery, and also ten dollars per year for the same purpose for the burial lot of my brother, Hugh Delzell, in said cemetery, said sum to be paid annually on the first day of April in each year for said period of fifty years, out of the rentals of my store room property, at number 37 East Washington street, Indianapolis, and the same shall be a lien and first charge on said real estate for said period of fifty years.

"ITEM 4. It is my will that my executrix in a reasonable time, cause to be erected on my real estate at number 37 East Washington street, Indianapolis, a four or five story substantial brick building of modern architecture and construction, and whereas I now have on deposit in the Exchange Bank of Macon, Georgia, the sum of twenty-thousand ($20,000) Dollars, I will and direct that so much of this sum as shall be on deposit at the time of my death, shall be expended in the construction of said building, and that out of the rents and income of my estate after the specified payments above provided for, my executrix shall appropriate and apply such additional sum as may be necessary to carry out the interest of this item of my will, and in the erection of such building, having regard to prospective value and the receipts

of the largest practical amount of rents, I also direct she shall keep all the buildings insured and in good repair.

"ITEM 5:    I will and direct in reference to a certain lot owned by me in the town of Vineville, Bibb County, Georgia, situated in the Forsyth Road, conveyed to me February 21st, 18— by the executor of the estate of Peter Solomen, to wit, that said lot descend to my daughter, Anna D. Hughes, as hereinafter provided in item number six (6) of this my will, with the further proviso, that should my daughter Anna D. Hughes die before her husband Daniel G. Hughes, and without a surviving child or children born to her, then the said Daniel G. Hughes shall have the right to use and occupy said premises for one year after the death of my said daughter free of rent, but should she have a child or children surviving her, then the said Hughes shall have the right to use and occupy said premises free of rent until the youngest shall have become twenty-one years of age and until the last survivor of said child shall arrive at the age of twenty-one years, but should children all die before arriving at the age of twenty-one years, then the said Hughes shall have the right to use the said premises for one year after the death of said last surviving child, such use to include use and enjoyment of lot and improvements.

"ITEM 6:    Subject to the foregoing provisions and conditions I devise and bequeath to my beloved daughter, Anna D. Hughes, all my real and personal estate forever, provided, however, that if my said daughter should die without issue, then it is my will that the property she may have derived from my estate at the time of her death shall have descended to my nephews and nieces from my own blood, and the income and provisions derived therefrom divided equally among them and their descendants for the period of fifty years after the date of the probate of my will, and at the expiration of fifty years, all of said property shall be sold and the proceeds divided equally among my nephews and nieces of my own blood and their descendants shall share and share alike.

"ITEM 7:    Should my daughter, Anna D. Hughes, leave a child or children, the issue of her

body surviving her, then it is my will that all of the real and personal estate by her owned, derived from my estate, shall descend equally to her child or the survivors of them, being my grand children, and such grandchildren or grand child shall not have the power or right to sell, incumber or convey the same, but the same shall descend in equal proportion to my great grand children if any there be, or the survivors of them, and should my grand children die without children, heirs of their bodies, then it is my will that the real estate derived from my estate shall descend to the descendants of my nephews and nieces of my own blood or the survivors of them.

"ITEM 8: It is my will more fully expressed, that neither my daughter nor any of her children or grand children shall ever sell, convey or in any way encumber the real estate herein derived from my estate situated in Leavenworth, Kansas, Vineville, Georgia, and Marion County, Indiana, except as above accepted, nor anticipate the rental thereof for more than one year in advance until at the expiration of the period of fifty years after my death, and then said property shall be sold and the proceeds thereof divided among those entitled to it as above provided.

"ITEM 9: It is my will that my daughter, Anna D. Hughes, subject to the specifications and bequests herein mentioned, during her life time, shall have the sole and exclusive possession and control of my real and personal estate, and shall receive and control all incomes and proceeds derived therefrom, to be by her kept and retained, for her own use and benefit, in her own discretion, without accounting to any one, and after her death, then to whom the property may descend by the terms of my will, shall, during the period of fifty years during which time the property cannot be sold, be entitled to receive the income and proceeds for their own use and benefit.

"ITEM 10: I hereby nominate my beloved daughter, Anna D. Hughes, executrix of this my last Will and Testament, and without being required to give bond any further than the Court may deem necessary to protect the creditors of my estate."

It is admitted that so much of the above will as attempts to suspend the power of alienation of such real estate for a period of fifty years is void, on account of the rule against perpetuities and the statute prohibiting the suspension of the power of alienation. §3998 Burns 1914, §2962 R. S. 1881; *Fowler* v. *Duhme* (1896), 143 Ind. 248.

The appellants contend that the parts of the will which offend in the above respect can be disregarded and a valid disposition of the property remain, while the appellees insist that the void parts of said will are so interwoven with the other parts, as to render the whole instrument void. Because of our conclusions hereinafter stated upon the other questions raised, it is not necessary that we discuss this question at length.

The general rule is that where part of a will is valid and part invalid, if the invalid part may be eliminated and the remaining part will carry out the main scheme and intention of the testator and cast his property where he intended it to go, then such invalid part will not be held to destroy the whole will. *Darling* v. *Rogers* (1839), 22 Wend. (N. Y.) 83; *Tilden* v. *Green* (1891), 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487; *Greenough* v. *Osgood* (1920), 235 Mass. 235, 126 N. E. 461; *Fowler* v. *Duhme, supra.*

We view the will under consideration as being within the rule above stated, and therefore we may disregard that part which offends the rule against perpetuities and the statute against suspending the power of alienation, and the general intent of the testator will not be destroyed but will be given effect.

The question then is, what estate did the daughter, Anna D. Hughes, take under the will of her father?

By item 6 of the above will, there is no question but that the following language, "subject to the foregoing provisions and conditions, I devise and bequeath to my

beloved daughter, Anna D. Hughes, all my real
3.   and personal estate forever," if that were all of
said item, would be sufficient to devise a fee-
simple in the real estate.   §3123 Burns 1914, §2567 R.
S. 1881; *Roy* v. *Rowe* (1883), 90 Ind. 54; *Gibson* v.
*Brown* (1915), 62 Ind. App. 460.

It is necessary then for us to determine what effect
should be given to the part immediately following the
above, namely, "provided, however, that if my said
daughter should die without issue, then it is my will that
the property she may have derived from my estate at
the time of her death shall have descended to my
nephews and nieces from my own blood."

It is the universally recognized rule that the inten-
tion of the testator, when it is clearly expressed, must
be given effect, in the construction of a will.   It
4.   is also a well recognized rule that where the in-
tent is not clearly expressed, or is couched in
ambiguous phraseology, so that reasonable differences
of opinion may exist as to what the testator's intention
was, then resort should be had to established rules of
construction.

As said in this court in the case of *Aldred* v. *Sylvester*
(1916), 184 Ind. 542:   "In such cases the declared re-
sults must necessarily vary with the elasticity of imagi-
nation of the various judges that may be concerned in
the determination, if only the language of the will may
be considered.   Viewed, however, in the light of rules
evolved from the observation and experience of cen-
turies, it may be asserted with confidence that the real
intent is more apt to be revealed."

The testator's intention must be given effect when
clearly expressed, but if his intention is in doubt, then
it is the duty of the courts to apply recognized rules of
construction, even though that may result in a con-

struction different from what the testator may have had in his own mind, but failed to clearly express.

As has been said: "The law presumes that a testator knows, when executing his will, that uncertain language used by him may be subjected to the well-recognized rules of construction." *Boren* v. *Reeves* (1919), 73 Ind. App. 604.

When the testator said in his will, "provided however, that if my said daughter should die without issue," did he refer to or have in mind her dying before his death, or did he refer to her death at any time, whether before, or after his death? If he meant the former, then the estate vested absolutely in the daughter at his death, she being living at that time. If he referred to her death at some time after his death, then the vesting of the estate would be postponed until her death.

In view of the fact that the law favors the vesting of estates at the earliest possible moment, and, if possible, will so construe a will as to vest the entire

5.  estate at the time of the testator's death, we cannot say that his intention in this respect is clearly expressed. As his intention is not clearly expressed, then we should resort to well-recognized rules of construction to aid us.

A well-established rule in this state is that words of survivorship, used in disposing of an estate, are presumed to relate to the death of the testator,

6.  rather than the death of the first taker, and that where real estate is devised to one, in terms sufficient to give a fee-simple, and a devise over is made, conditioned upon the first taker dying without issue, the phrase "dying without issue" is construed to refer to a death in the lifetime of the testator, unless a contrary intention is clearly expressed. *Aldred* v. *Sylvester, supra; Harris* v. *Carpenter* (1887), 109 Ind. 540; *Hoover* v. *Hoover* (1888), 116 Ind. 498; *Heilman* v.

*Heilman* (1891), 129 Ind. 59; *Wright* v. *Charley* (1891), 129 Ind. 257; *Borgner* v. *Brown* (1893), 133 Ind. 391; *Fowler* v. *Duhme, supra; Moores* v. *Hare* (1896), 144 Ind. 573; *Aspy* v. *Lewis* (1899), 152 Ind. 493; *Campbell* v. *Bradford* (1906), 166 Ind. 451; *Boren* v. *Reeves, supra.*

The language used in some of the cases above cited, and held to refer to a death in the lifetime of the testator, follows:

In the case of *Aldred* v. *Sylvester, supra,* "Item III. I further order and direct, that at the death of said Margaret McDaniel (above named) that the said 80-acres tract of land above described be sold at private or public sale as may be most advisable, and for the best price that can be procured for the same, and that the proceeds of such sale be equally divided among my brothers and sister * * *: (naming them). But if any or either of said brothers and sisters last named shall die previous to the termination of such life estate, and the sale of said 80-acre tract, then in that case, the descendants of such deceased devisees are to have the same share as their ancestors would have had if then living."

In *Harris* v. *Carpenter, supra,* after giving a life estate to his wife, "and at her death the same shall be the property of and pass to my daughter, Laura Carpenter, * * * in fee; but if she, said Laura, be not living, then to her heirs forever."

In the case of *Heilman* v. *Heilman, supra,* "Seventh. After the death of my dear wife all my estate, excepting the bequests herein made, shall be divided in equal shares among all my children, and should any of my children be dead, and have left children, then they shall be entitled to the distributive share of their parents."

In the case of *Borgner* v. *Brown, supra,* "At the death of my said wife, the real estate aforesaid I give and

devise to my son James Helms and his heirs. If my said son should die without issue, then the above-named real estate one-third to descend to his wife, if living, and the remainder to go to my children."

* In *Fowler* v. *Duhme, supra*, "3. I give, devise and bequeath the remaining undivided two-thirds in value of all my real estate, wheresoever situate, to my three children, James M. Fowler, Annis E. Chase and Ophelia M. Fowler, share and share alike, in equal portions, and to their respective heirs, forever, subject to the following conditions, to-wit: (a) In the event of the death of any of my said children without lawful issue *living at the time of the death of such child,* then the share of such deceased child shall vest in, and become the absolute property in fee simple, in equal portions, of such of my said children as shall then be living, and the living descendants of such, if any, as may then be dead * * *."

In *Moores* v. *Hare, supra,* the will of Stoughton A. Fletcher gave certain real estate to his daughter, Maria F. Ritzinger, for life, and then contained the following: "At the death of her, said Maria F. Ritzinger, all the said real estate so devised to her for life shall go to her children in fee simple. If any child of hers shall have died, leaving a child or children, then the portion of said real estate that would have gone to the parent shall go to such child or children."

In the case of *Aspy* v. *Lewis, supra,* after giving a life estate to the widow, "and I direct further that the above estate that is bequeathed to my wife shall be in the full possession of my only daughter, Maria Louisa, at the death or marriage of my wife, provided she shall be living, and if she is not living, at the death or marriage of my wife then the estate to go to the use of my brothers and sisters or their heirs."

In the case of *Campbell* v. *Bradford, supra,* "Sixth.

At the death of my wife, I direct that all my real estate shall descend and go to my two sons, * * * and if either of them shall be deceased leaving children surviving him then such child or children shall inherit all their father's interest in my real estate, and in case of either of my sons being deceased and leaving no child or children living then the surviving son shall inherit all my real estate at the death of my wife."

In the case of *Boren* v. *Reeves, supra,* after devising all his property to his daughter, the will contained the following: "If my said daughter shall die, without issue alive, then at her death, I hereby direct and will that whatever remains shall be equally divided, between the children of my deceased brother, Albert Boren (naming them)."

The rule that words of survivorship will be construed as relating to a death preceding the death of the testator, unless otherwise clearly expressed, has been recognized so long by this court that it cannot be questioned, and such rule has been applied in so many cases where the language used was of similar effect to that used in the case at bar, that such construction has the force of a rule of property and should not be disturbed.

It is suggested that the following clause in item six, "then it is my will that the property she *may have derived* from my estate at the time of her death *shall have descended* to my nephews and nieces," is an indication that he referred to her death after his death, because of the use of the words, "may have derived." This is followed later by the words, "shall have descended," and it is evident that he could not have used the correct tense in both of these phrases. It is not unlikely that he failed to use the tense which would correctly express his intent in either case. This is only another evidence of the ambiguity of his language, and makes more necessary the resort to settled rules of construction.

It is also suggested that certain provisions contained in his will as to the management of his property after his death are an indication that he did not intend her to have a fee-simple absolute, but that he contemplated her surviving him, and that the limitation over might take effect at her death following his. Such provisions are not so much an indication of this as they are an indication that he thought his limitation as to alienation for a period of fifty years was valid and his directions were in contemplation of that. We are of the opinion that the limitation over to the nephews and nieces and their descendants, contained in item six of said will referred to the death of said daughter, Anna D. Hughes, before the death of the testator, and that, upon his death, she took an estate in fee-simple.

Even if we were to hold with appellants that the limitation over to the nephews and nieces is conditioned upon said daughter dying without issue either before or after his death, it would not avail appellants anything, because, if such limitation over is not restricted to her dying without issue before the testator, it is then a limitation over after an indefinite failure of issue and is void as being too remote. In that event, the daughter took what would formerly have been an estate tail, which, under our statute (§3994 Burns 1914, §2958 R. S. 1881), is a fee-simple estate.

The clause, "die without issue," with no words to limit it, is held to denote an indefinite failure of issue and is void, and a limitation over, conditioned upon such an event, cannot take effect, but the first taker is held to take an estate tail. *Huxford* v. *Milligan* (1875), 50 Ind. 542; *Outland* v. *Bowen* (1888), 115 Ind. 150; *Cain* v. *Robertson* (1901), 27 Ind. App. 198.

If, connected with the clause "die without issue," there is used some word or words that denote a definite

time for the failure of issue to take place, such as where the clause is, "die without issue *living* at his death," or die without *leaving* issue," or "die without issue *surviving*," then it is held to denote a definite failure of issue. *Granger* v. *Granger* (1896), 147 Ind. 95, 112.

As said in the case of *Outland* v. *Bowen, supra,* "Ordinarily, an estate tail is created by a conveyance or devise in fee to some particular person, with a limitation over, in the event of the death of the person named without issue, or upon an indefinite failure of issue. The doctrine of the books seems to be, that whenever it appears in the instrument creating the estate that it was intended that the issue of the first taker should take by inheritance in a direct line, and in a regular order and course of descent, so long as his posterity should endure, and an estate in fee or in tail is given in remainder, upon an indefinite failure of issue, then the estate first created will be construed to be an estate tail."

If the failure of issue referred to in this will means a failure of issue within the lifetime of the testator, or a failure of issue at the time of the death of the daughter, then it is a definite failure of issue. If the will refers to a failure of issue at any time which might be subsequent to her death, that is, if it means that although she had children living when she died, but that if these children and their descendants all died later, after the death of the testator, then the limitation over was to take effect, it would clearly be a limitation upon an indefinite failure of issue. In that event, it might not take effect until after the period allowed by our statute. §3998 Burns 1914, *supra.*

In view of the construction generally given to language similar to that used in item six of the will of Samuel Delzell, and considering the reference to grandchildren and descendants of grandchildren in item two,

and the language used in item seven postponing  ᵤₓ. vesting of the estate in the nephews and nieces until the daughter's grandchildren should all die without children, it is evident, that if we do not hold that in item six, he referred to his daughter's death and a failure of her issue in his own life time, that he then referred to a failure of issue at any time it might occur, even long after her death, which would be an indefinite failure of issue, in which event the daughter, under the statute and decisions above cited, would take a fee simple.

The court committed no error in sustaining the demurrer to the complaint.

The judgment is affirmed.

Ewbank, C. J., not participating.