WEPPLER ET AL. *v.* HOFFINE ET AL.

[No. 27,399. Filed October 8, 1940. Rehearing denied December 23, 1940. Petition for writ of certiorari denied by the U. S. Supreme Court March 10, 1941.]

32

*Fraser & Isham* and *Charles M. Snyder,* all of Fowler, and *Miller & Kraft,* of Gilman, Illinois, for appellants.

*Burton B. Berry, Wilbur G. Nolin* and *Ernest M. Hawkins,* all of Fowler, for appellees.

SHAKE, J.—In 1917, Adam Weppler executed his will, which contained the following provisions:

"Item 1. My beloved wife, Anna Weppler, shall receive five hundred dollars a year out of my real and personal property till her death.

"Item 2. My real estate in Gilman, Illinois, shall be sold as soon as convenient after my death.

. . .

"Item 4. At my wife's death all my property shall be divided equally among our eight children, should any of them die without issue before my wife's death, then in that case the deceased one's share shall be given to the surviving children of mine before mentioned above.

"Item 5. My farm of two hundred forty acres in Benton County, Indiana, must not be sold till my beloved wife dies."

The testator died December 24, 1925, the owner of the real estate described in the will, and survived by his wife and their eight children. The widow elected to take under the will. In February, 1935, Ernest Weppler, one of the testator's sons, conveyed by quitclaim to his wife, Mabel, his undivided one-eighth interest in the 240-acre farm in Benton County, referred to in item 5 of the will. Ernest Weppler died in March, 1936, without issue, survived by his wife, his mother, and seven brothers and sisters. Following her husband's death, Mabel Weppler quitclaimed said one-eighth interest in said 240-acre farm to the personal representative of her husband's estate, for the express purpose of making it available for the payment of his debts.

This action was brought under the Declaratory Judgments Act (§ 3-1104, Burns' 1933, § 441, Baldwin's

1934) by the administrator with the will annexed of the estate of Ernest Weppler, deceased, for a construction of the will of Adam Weppler. The trial court made a special finding of facts, and adjudged that on the death of the testator the absolute fee to the real estate described in item 5 vested immediately in the eight children, of whom Ernest Weppler was one, and that an undivided one-eighth interest in said land passed to Mabel Weppler by virtue of her husband's deed to her and thereafter to the personal representative of Ernest Weppler's estate by her deed to him.

One of the errors assigned is that the decision is contrary to law. The appellants also assert that the administrator with the will annexed of the estate of Ernest Weppler had no legal capacity to bring and maintain the action, and that the trial court erred in striking from the record the appellants' first partial demurrer to the complaint and in sustaining appellees' demurrer to the appellants' second paragraph of answer.

The will is devoid of the usual words of gift, but the clause, "at my wife's death all my property shall be divided equally among our eight children," is sufficient to effectuate a testamentary disposition of the real estate referred to in item 5. Standing alone and unqualified by any other condition, this clause would vest a fee simple title in the eight children, though it is made subject, of course, to the wife's annuity, established by item 1, and the postponement of partition, provided for in item 5. § 7-705 and § 3-2406, Burns' 1933, § 3362 and § 1111, Baldwin's 1934. The fee vested in the eight children is a conditional one, however, by virtue of the subsequent clause reading, "should any of them die without issue before my wife's death, then in that case the deceased one's

share shall be given to the surviving children of mine before mentioned above." That is to say, the will created a determinable conditional fee in favor of each of the testator's eight children, the condition being that such fee might be divested by the death of a child without issue before the death of the testator's wife. The use of the clause, "before my wife's death," excludes the presumption that the death referred to was one occurring in the lifetime of the testator. *Quilliam* v. *Union Trust Co.* (1924), 194 Ind. 521, 142 N. E. 214.

A determinable conditional fee may be conveyed, but the grantee takes title subject to the conditions with which it is impressed. So, the testator's ■■ son, Ernest Weppler, had the right to convey to his wife, Mabel, his interest in the 240-acre farm in Benton County, but his death without issue before his mother's demise divested the last grantee so that said farm would become the absolute property of the seven surviving children on the death of the testator's widow, should the situation remain otherwise unchanged. *Hillis* v. *Dils* (1913), 53 Ind. App. 576, 100 N. E. 1047, 102 N. E. 140; *Hall* v. *Bauchert* (1918), 67 Ind. App. 201, 117 N. E. 972.

Appellants say that "there is no statutory authorization for an administrator to accept a deed to real estate in which his decedent has an interest for ■■ the purpose of sale to make assets to pay debts." Even if that be true (which we need not decide), this is not a proceeding to sell real estate to pay debts. Actions of this character are specifically authorized by the Declaratory Judgments Act. It appears from the briefs that the parties are in agreement as to the ownership of the rents and profits derived from the real estate in controversy since the testator's death. Whether the appellees' share thereof is subject to a claim on

behalf of the Adam Weppler estate is not germane to this action, and since the facts relating to the principal issue are not in dispute, a new trial is unnecessary.

Reversed, with directions to restate the conclusions of law to the effect that appellee administrator has no interest in the real estate described in the complaint, and to enter judgment accordingly.

NOTE.—Reported in 29 N. E. (2d) 204.

### ON PETITION FOR REHEARING.

SHAKE, J.—In their petition for a rehearing, the appellees urge that in the consideration of this case the court failed to take into account certain rules of construction applicable to the interpretation of wills, which, if applied, would have led to a different conclusion. Our original opinion was written upon the theory that the will of Adam Weppler was not uncertain nor ambiguous. We held that the meaning of the clause, "should any of them (referring to the testator's children) die without issue before my wife's death," when considered in the light of the other provisions, was definite and clear. Under such circumstances, it is not proper to apply the rule that words of survivorship will be held to relate to the death of the testator rather than to the death of the first taker because this rule is merely one of construction, to be resorted to only when the terms of the will relating to that subject are uncertain and ambiguous.

"Where the intent of the testator is plain, there is no occasion for resort to such rules, because no construction is required." *Alsman* v. *Walters* (1916), 184 Ind. 565, 569, 106 N. E. 879, 880, 111 N. E. 921.

The appellees have directed our particular attention to *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623,

and *Aspy* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756.
We have subjected these cases, together with the others
cited, to careful scrutiny. They set out in detail the
rules for construing uncertain and ambiguous wills
that have been developed and enunciated by the courts
through the years. These rules have been so often
defined and so frequently reiterated that there can be
little controversy about their meaning.

The apparent conflicts in the reported cases where
wills have been construed may be better understood,
if they cannot be harmonized, by taking into
account the facts involved because, in the nature
of things, the construction of a will ordinarily
presents a mixed question of law and of fact. There
is usually no question as to the terms of the instrument,
though the meaning of the provisions may not be clear.
Too often, there has been a disposition on the part of
the courts to isolate a particular phrase, clause, or
provision of a will and ascribe to it the same meaning
that has been given to similar language in another will.
Thus, in the case at bar, the appellees would have us
construe the clause, "should any of them (the testator's
children) die without issue before my wife's death,"
the same as comparable language was construed in the
cases of *Fowler* v. *Duhme* and *Aspy* v. *Lewis, supra.*
The dangers in adopting such a policy are so clearly set
out by Professor Page in his treatise on wills that we
feel justified in quoting liberally from that text:

> "In determining testator's intention as expressed
> in his will, courts are often asked to decide the case
> in dispute in the same way as some previous case
> in which somewhat similar expressions were em-
> ployed in the will there construed. In most cases
> courts are unwilling to construe a will in a certain
> manner merely because in a previous case they

have construed a will containing similar expressions in the same manner.

"While such a method of construction is, at first glance, very tempting, it is radically at variance with what we shall see is the fundamental rule of construction, namely, that the intention of the testator is to be ascertained, and that it is to be ascertained from the language used in the entire will. An attempt, therefore, to construe the separate phrases and clauses of the will in accordance with precedents is likely to lead at once to a total disregard of testator's intention, unless it happens that in the two wills taken each as a whole testator's intention is substantially the same, and to be carried out in the same way. Such a coincidence rarely happens except in the introductory clause and attestation clause of a will.

"Wills are almost never drawn in any set form. In this respect they are strikingly different from instruments like deeds, leases, mortgages and certain types of business contracts, like insurance policies, bills of lading, etc. Instruments of each of these different classes are drawn each substantially alike. A precedent for construing a phrase in a deed, therefore, is likely to be a most valuable precedent for construing the same phrase in another deed, since the effective parts of the two instruments are likely to be almost identical.

"On the other hand, the construction of a phrase in a will is likely to give but little help in construing a similar phrase in another will, since the remaining effective parts of the two instruments are likely to be widely dissimilar. While precedents are of great weight in aiding construction, they have not the controlling force that they have in most branches of law, since a slight difference in the language which testator uses may make a great difference in his intention." Page on Wills, Vol. 1, 2nd Ed., § 807, p. 1363.

After having again considered the provisions of the will of Adam Weppler as a whole, we are still of the opinion that the intentions of the testator are clear

and unambiguous. We are further of the opinion that when the facts presented by the cases called to our attention by the appellees are analyzed, those cases can be distinguished from the one now before us.

The petition for rehearing is denied.

NOTE.—Reported in 30 N. E. (2d) 549.