Mary Cecile DONAHUE, in her Individual capacity, Mary Cecile Donahue, in her capacity as Trustee of the Trust Created under the Last Will and Testament of Ellen D. Watson, Deceased, Mary Cecile Donahue, in her capacity of Beneficiary of the Trust created under the Last Will and Testament of Ellen D. Watson, Deceased, Appellant (Defendant Below),

v.

Edward J. WATSON, Mary Ann Elliott, Francis D. Watson, Nancy Elizabeth Plaster, Sister Ellen Watson, Martha Connell, William C. Watson, Appellees (Plaintiffs Below).

No. 2–679A178.

Court of Appeals of Indiana, Fourth District.

Oct. 30, 1980.

Thomas W. Munger, Lafayette, for appellant.

Lesley A. Meade, Hanna, Gerde & Meade, Lafayette, for appellees.

CHIPMAN, Judge.

Mary Cecile Donahue, individually and as trustee of her mother's testamentary trust, appeals from adverse judgments removing her as trustee and ordering her individually to pay certain sums as reimbursement to the trust. One of the judgments arises from the civil docket of the Tippecanoe Circuit Court and the other from its probate docket. Although Mary took separate appeals we are consolidating them in accordance with Indiana Rules of Procedure, Appellate Rule 5(B) since there are common questions of law.

The common issues are:

(1) Whether Mary should have been removed as trustee and

(2) Did the trial court properly construe the trust instrument?

We affirm.

## FACTS

Ellen D. Watson died testate in January of 1954 and her Will was probated on January 26, 1954. The Will established a Trust, the principal or corpus consisted of all of the real estate Ellen owned at her death. Her son, Francis D. Watson, and her daughter, Mary Cecile Donahue, were named as co–trustees. They were directed to pay the net income of the Trust to themselves,

"for and during their natural lives, share and share alike, and to the survivor, provided, that if either my said son or daughter shall have died leaving a child or children him or her surviving, such child or children shall take the share in said net income which his, her or their parent would have taken if living."

After Ellen's death, Francis and Mary acted as co–trustees and divided the income from the Trust as instructed. When Francis died on December 28, 1971, Mary assumed the position of sole trustee. In such capacity, she supervised the management of the Trust property, collected the Trust income and distributed the net income. She paid income one –half to herself and one–half to the children of Francis D. Watson: Edward J. Watson, Mary Ann Elliott, Francis D. Watson, Jr., Nancy Elizabeth Plaster, Sister Ellen Watson, Martha Connell, and William C. Watson.

As sole trustee, Mary sold several parcels of real estate which were part of the Trust principal. The net proceeds from the sales she then distributed as income.

On January 21, 1975, all of the grandchildren, except William C. Watson, sued Mary, individually and as trustee. The suit was filed in the Tippecanoe Circuit Court on the civil docket. Although William C. Watson was named as a defendant, he is represented by the grandchildren's attorney and joins with the other grandchildren's pleadings. He will be included in the group referred to in this opinion as "Grandchildren." The Grandchildren petitioned the court to 1) construe the Trust, 2) instruct the trustee, 3) find Mary in breach of her duties as trustee, 4) enjoin her from distributing the proceeds of any future sales of the Trust property, 5) order her to restore to the Trust the proceeds from the sale of the Trust property which she distributed as income, and 6) order her to pay their attorney's fees.

In her answer, Mary advanced a new construction of the Trust which would provide that she was the sole income beneficiary upon the death of her brother. Pursuant to this construction, she made a written demand upon the Grandchildren for the return of all the distributions of income she

made to them. Since the Grandchildren failed to return the money, she filed a counter–claim and cross–complaint for the return of the proceeds. The Grandchildren filed a Motion for Summary Judgment on May 28, 1976. On September 20, 1977, they petitioned for the removal of Mary as trustee and the appointment of a temporary trustee.

On April 3, 1978, Mary filed her trustee's reports for the 17th, 18th and 19th trust years in the Tippecanoe Circuit Court, probate docket. On May 12, 1978, the Grandchildren filed their objections to the reports alleging she (1) failed to properly maintain separate accounts for principal and income, (2) improperly distributed principal to herself, (3) had not paid income quarterly, and (4) had not made annual written statements. Mary filed a motion to dismiss the objections alleging they were not timely filed under IC 30–4–5–14(b).

On October 17, 1977, a hearing was held on the petition to remove Mary as trustee filed on the civil docket. On October 24, 1978, the court granted· Grandchildren's "Motion for Summary Judgment and Petition to Remove Trustee" and made the following findings and order:

"That the Plaintiffs are beneficiaries of the Ellen D. Watson Trust, having vested interests in the income and principal of said trust;

That the plaintiffs are entitled to share equally in one–half (½) of the net income of the trust and that the defendant, Mary Cecile Donahue, is entitled to receive one–half (½) of the net income of the trust for the rest of her natural life;

. . . . .

That the grandchildren of Ellen D. Watson have vested remainder interests in the trust estate, or principal, of said trust;

That Mary Cecile Donahue's beneficial interest in said trust is limited to one–half (½) of the net income of the trust and does not extend to any part or parcel of the principal of said trust;

That the defendant, Mary Cecile Donahue, as trustee, sold various tracts of trust property, the principal of the trust, and declared, treated, and distributed the proceeds of the various sales as income of the trust, contrary to the terms of the trust and the law applicable thereto; That such abuse of her discretionary power by the defendant has resulted in improper distributions of trust principal and in dissipation and waste of the trust estate;

That Mary Cecile Donahue, as trustee, has failed to discharge her duties under the trust in that she has failed to pay one–half (½) of the net income of the trust to the plaintiffs since January of 1975 and that the plaintiffs are entitled to the receipt of said income;

That the trustee has established permanent residence outside the State of Indiana;

That the trustee has committed a breach of trust by having caused various charges to be made against principal which should have been made against income, and the sums so charged against principal should be restored to principal by the trustee; and

That Mary Cecile Donahue is personally liable to the trust, and to plaintiffs for breach of trust and for attorney fees and should be removed as Trustee and a successor appointed.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the proper interpretation of the trust established by the Last Will and Testament of Ellen D. Watson, deceased, is in accordance with the findings, as set out above and that the Trustee, Mary Cecile Donahue, has removed her residence from the State of Indiana, failed to maintain separate accounts for principal and income, commingled funds, made improper distributions and improper charges against principal, whereby she should be, and is hereby, removed as Trustee.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mary Cecile Donahue is personally liable to the Trust, and to petitioners, for funds improperly distributed to herself and for

improper dissipation of trust principal during the period covered by her Reports for the 17th, 18th and 19th trust years and for attorney fees.

An order entered this date in Estate No. 7015 of this Court, [infra] granting summary judgment is incorporated herein and made a part hereof."

On the same day the court entered the following on the probate docket:

"The Court . . . now finds for the Petitioners upon their objections to said report of Mary Cecile Donahue, Trustee, as follows:

The Court finds that Mary Cecile Donahue, trustee:

Has removed her residence from the State of Indiana;

Has failed to maintain separate accounts for principal and income and has improperly commingled trust funds;

Has made improper distributions of trust principal and income; and

Has made improper charges of expenses against principal.

Whereby, the said Mary Cecile Donahue has become personally liable to the Trust, and to petitioners and should be removed as Trustee.

The Court further finds:

That for the period January 1, 1972, to December 31, 1977, the Trust experienced a gross income of $172,613.64, during which period, the Trust incurred $62,322.73 in expenses properly chargeable to income;

That as a result, the total net income of the Trust for this period was $110,290.91;

That of this sum, the Trustee, Mary Cecile Donahue, as beneficiary, was entitled to receive $55,145.46[,] and the petitioners were collectively entitled to receive $55,145.45;

That during said period, Mary Cecile Donahue did, in fact, receive the sum of $85,026.04, which exceeded the amount to which she was entitled by $29,880.58;

That Mary Cecile Donahue is personally liable to the Trust and to the petitioners for all sums improperly or wrongfully distributed by her as Trustee and should be required to return the sum of $29,880.58 to the Trust;

That during this same period that the petitioners were collectively entitled to receive $55,145.45, there was, in fact, distributed to them only $46,792.28;

That the petitioners should receive the sum of $8,353.17 to be paid from the Trust by the new and successor trustee;

That as of December 31, 1977, the Trustee, Mary Cecile Donahue, should have been holding in the Trust the sum of $121,953.84, which sum represents the net proceeds from various sales of trust property;

That, in fact, the Trustee held on that date the sum of $94,736.96, of which $8,383.17 was properly owing to the petitioners;

That Mary Cecile Donahue is personally liable to the Trust and to the petitioners for all principal of the trust improperly or wrongfully distributed by her as Trustee, lost or wasted, improperly commingled, or otherwise dissipated as a result of her failure to properly protect and preserve the Trust; and

That Mary Cecile Donahue should restore to the Trust such sum of money as is necessary to establish a principal account in the amount of $121,953.84.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Trustee, Mary Cecile Donahue, has removed her residence from the State of Indiana, failed to maintain separate accounts for principal and income, commingled funds, made improper distributions and improper charges against principal, whereby she should be, and is hereby, removed as Trustee.

The Court now appoints Lafayette Bank and Trust Company as successor trustee of the trust established in the Last Will and Testament of Ellen D. Watson. . . .

It is further ORDERED, ADJUDGED AND DECREED that Mary Cecile Donahue is personally liable to the Trust, and to petitioners, for funds improperly distributed to herself and for improper dissipation of trust principal during the period of said Reports [sic] in the total sum of $35,570.05.

It is further ORDERED, ADJUDGED AND DECREED that Lafayette Bank and Trust Company, upon qualification as successor trustee, distribute to petitioners the sum of $8,353.17, as further income distribution for the period covered by said reports.

An order entered this date in Cause No. C-29-75 of this court [supra], granting summary judgment is incorporated herein and made a part hereof."

### ISSUE I.   REMOVAL OF TRUSTEE

Mary was ordered removed as trustee in both cases.   On appeal she contends this was improper in the civil action because:

1. a civil court does not have jurisdiction to do so;
2. the relief was excessive as not requested in the Grandchildren's complaint;
3. the relief was granted by a judgment on the pleadings;
4. she could not be removed solely for her change in residency;
5. no cause for her removal was shown.

She contends it was improper in the probate action because:

1. the Grandchildren's objections to her reports were not timely filed, thus any action in response to them was improper;
2. she could not be removed solely for her change in residency;
3. no cause for her removal was shown.

We have consolidated these issues for purposes of discussion as:

A. Jurisdiction of Civil Court to Remove Trustee,

B. Judgment on the Pleadings,

C. Removal as Excessive Relief,

D. Residency, and

E. Cause for Removal.

### A.   JURISDICTION OF CIVIL COURT TO REMOVE TRUSTEE

Mary contends the civil court exceeded its authority by ordering her removal as trustee.   She argues that probate courts have exclusive jurisdiction in this area.

■   Assuming *arguendo* that the civil court did not have jurisdiction, we still are not persuaded that its actions in doing so are reversible.   She can only be granted a remedy from this court for such an error upon a showing of prejudice.   *State ex rel. Townsend v. Tipton Circuit Court*, (1961) 242 Ind. 226, 177 N.E.2d 590; *Martin v. Indianapolis Morris Plan Corporation*, (1980) Ind.App., 400 N.E.2d 1173; *Blake v. Blake*, (1979) Ind.App., 391 N.E.2d 848; *see also* Indiana Rules of Procedure, Trial Rule 75(B).   Prejudice has not been alleged nor shown to exist in this case.

### B.   JUDGMENT ON THE PLEADINGS

■   Mary contends she was removed in the civil case by a judgment on the pleadings since no affidavits were filed in the civil court.   The record of the civil case does not support this allegation.   Included in the record before us is the "Transcript of Hearing on Petition to Remove Trustee" held on October 17, 1977.   Since evidence was heard, relief could not have been granted by a judgment on the pleadings, T.R. 12(C).

### C.   REMOVAL AS EXCESSIVE RELIEF

■   Mary contends her removal was not requested in Grandchildren's civil complaint.   The complaint alleged various breaches of trust and asked for redress, repayment, instructions to Mary, an injunction against her further distributing proceeds from the sale of Trust property as income, and "for such other and further relief as to the court seems just and proper."   This alone could be sufficient to raise the issue of her removal.

■   In addition, on September 20, 1977, they filed a "Petition to Remove Trustee

and Appoint Temporary Trustee." However, Mary argues the petition does not request her permanent removal. The petition reads in part:

"That in order to protect the Trust from any diminution in value caused by the actions taken by the defendant, Mary Cecile Donahue, as trustee of said Trust, such actions being the subject of litigation, it is necessary, desirable, and in the best interest of all parties concerned that the Court remove the defendant, Mary Cecile Donahue, and appoint a temporary trustee for such period of time as is necessary for this cause to be litigated."

Even though only a temporary successor trustee is requested this does not necessarily mean the Grandchildren only asked for her temporary removal.

In any event, it is not clear that the civil court could not remove the trustee *sua sponte* upon finding sufficient grounds. *See* IC 30–4–3–29; Restatement of Trusts 2d § 107.

■ In the probate action Mary alleges the issue of her removal was not properly before the court because the Grandchildren's objections to her reports were not timely filed. IC 30–4–5–14(b) reads:

"In a proceeding in which the court has been requested by petition to approve a verified written statement of accounts, any person authorized by 30–4–5–12(c) to petition for an accounting may file an appropriate responsive pleading, and if he does so, he must file it within the period of time [twenty days] after notice that a responsive pleading is required to be filed after service of a prior pleading under the Indiana Rules of Procedure."

However, IC 30–4–5–14(d) reads:

"Upon request for approval of a verified written statement of accounts and the filing of objections, *if any*, the court shall determine the correctness of the statement and the validity and propriety of all actions of the trustee described in the statement and may take any additional action that it deems necessary." (emphasis added)

This provision gives the court authority to determine the propriety of the trustee's actions and grant appropriate relief with or without objections being filed. Regardless of whether the Grandchildren's objections were timely filed or not, the court had discretion to scrutinize the reports and Mary's actions and grant the relief it deemed appropriate.

D. RESIDENCY

■ In both cases Mary alleges she was improperly removed as trustee solely because she was no longer an Indiana resident. We agree that if this were true it would be improper. Indiana residency is not a qualification. IC 30–4–2–11. However, even though the court found Mary was no longer an Indiana resident, this was not the sole basis for her removal. The court also found improper distributions and improper charges against principal in its order concerning her removal.

E. CAUSE FOR REMOVAL

■ The findings in both cases include a determination that Mary sold Trust property and improperly distributed these proceeds as income. The commingling of principal and income and their respective expenses had diminished the principal of the Trust. She contends this was not just cause for her removal because her handling of the Trust property was within the discretion granted to her by the terms of the Trust. Specifically she points to the following passage:

"If there be any uncertainty or question as to whether any part of said trust estate be principal or income, or as to whether any cost, charge, expense, tax or assessment thereon should be charged against principal or income, said trustees shall have power, in their discretion, to settle and determine such question."

We cannot agree that this passage gives Mary unfettered discretion to treat funds as either income or principal. First, another provision of the Trust instrument implies that the testator's intent was that proceeds from the sale of Trust property are to be treated as principal:

"The trustees, with respect to any property . . . comprising the trust estate, shall have full power at any time . . . to invest and reinvest the principal and proceeds thereof, . . . and to sell, . . . alter and change the investments thereof from time to time."

In addition, IC 30–4–5–2(b)(1) in part defines "principal" as:

"consideration received by the trustee on the sale or other transfer of principal . . . or replacement or change in the form of principal."

Clearly the proceeds from the sale of the real property, which was the principal of the Trust, should not have been treated as income. By doing so, Mary abused the discretion granted her by the provisions of the Trust[1] and depleted the Trust principal.

### ISSUE II. CONSTRUCTION OF THE WILL[2]

### A. DISTRIBUTION OF INCOME

The provision in Ellen's Will which establishes the Trust reads as follows:

"Said trustees shall pay the net income from said estate in convenient installments, not less frequently than quarterly, to my said son, Francis D. Watson, and my said daughter, Mary Cecile Donahue, for and during their natural lives, share and share alike, and to the survivor, provided, that if either my said son or daughter shall have died leaving a child or children him or her surviving, such child or children shall take the share in said net income which his, her or their parent would have taken if living."

Mary contends this provisions gives the net income of the Trust to her and Francis for their lives to be divided between them equally and then all of the net income to the survivor for his or her life unless one of them predeceased the testatrix and left surviving issue. Only in that event would a grandchild of the testatrix receive his or her parent's share in the net income. This argument hinges on the phrase "shall have died" relating to the time of the testatrix's death.

The Grandchildren contend this provision clearly provides that upon the death of one of Ellen's children the issue of that deceased child would receive one–half of the net income of the Trust for the life of the surviving child. This argument is based on the phrase "shall have died" as relating to Ellen's children's deaths.

▪ In resolving this issue we must first note that the Trust instrument was construed on a motion for summary judgment. The standard for granting a summary judgment is well known: the motion is only to be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This court's role in construing written documents on a motion for a summary judgment has been aptly stated in *Wilson v. Kauffman*, (1973) 156 Ind.App. 307, 296 N.E.2d 432, 437:

"As a general rule the interpretation, construction or legal effect of a contract is a question to be determined by the court as a matter of law. However, another equally well accepted rule is that the construction of a contract is for the

---

1. Mary contends it was error to hold her personally liable for the proceeds of the sale of property which she distributed to herself as income beneficiary since the sale and distribution of proceeds as income was not an abuse of discretion. Since we have determined that the distribution of the proceeds as income was contrary to the terms of the Trust we have already resolved this issue.

2. We note that the court found Mary personally liable to the Trust in the amount of $29,880.58 due to her misconstruction of the Trust instrument. However, it only set forth the following order regarding these findings;

"It is further ORDERED, ADJUDGED AND DECREED that Lafayette Bank and Trust Company, upon qualification as successor trustee, distribute to petitioners the sum of $8,353.17, as further income distribution for the period covered by said reports.

Grandchildren, however, do not raise this as error. Nor does Mary specifically raise the issue of the $8,353.17 ordered to be paid to Grandchildren. Thus, our resolution of the construction of the Will will not affect the court's order for monetary relief.

jury where the terms of a contract are ambiguous and their meaning is to be determined by extrinsic evidence. Where a written contract is unambiguous the trial court should construe it and inform the jury as to its meaning. However, if it is ambiguous the particular ambiguity should be selected and submitted to the jury under property instructions. Also, when extraneous facts and circumstances are necessary to explain an ambiguous or uncertain contract the question of construction is one of mixed law and fact. Strictly speaking the interpretation of the contract is not submitted to the jury insofar as the question is one of construction and a question of law, but, the facts on which that construction rests must be determined by the jury. The construction of an ambiguous contract is a question of law where the ambiguity arises by reason of the language used and not because of extrinsic facts." (citations omitted)

Here it appears that the ambiguity arises because of the phrase "shall have died," i. e., to what time period it relates. In construing an ambiguity created by language used in a will we must first determine if the interest of the testator is otherwise clearly manifested in the provisions of the will. *Hayes v. Second National Bank of Richmond*, (1978) Ind.App., 375 N.E.2d 647. If the testator's intent cannot be determined from the instrument, we then must look to the rules of construction being ever mindful that the testator's intent is what must ultimately prevail. *In re Estate of Ensminger*, (1969) 144 Ind.App. 338, 246 N.E.2d 217.

The parties invite us to place a conclusive definition on the phrase "shall have died" (insofar as the time frame to which it relates) for the provisions of the Will. We decline to do so. As a verbal phrase we cannot limit its use to only one time frame.[3]

**3.** Mary cites *Quilliam v. Union Trust Co.*, (1924) 194 Ind. 521, 142 N.E. 214, as holding that as a general rule of will construction words of survivorship always refer to the death of the testator.

"The rule that words of survivorship will be construed as relating to a death preceding the death of the testator, unless otherwise clearly expressed, has been recognized so long by this court that it cannot be questioned, and such rule has been applied in so many cases where the language used was of similar effect to that used in the case at bar that such construction has the force of a rule of property, and should not be disturbed." *Id.* 142 N.E. at 218.

However, that rule deals specifically with title to real estate and arose due to the law's interest in vesting estates in real property at the earliest possible time. The Court in *Quilliam*, 142 N.E. at 217 also stated:

"When the testator said in his will, 'provided however, that if my said daughter should die without issue,' did he refer to or have in mind her dying before his death, or did he refer to her death at any time, whether before or after his death? If he meant the former, then the estate vested absolutely in the daughter at his death, she being living at that time. If he referred to her death at some time after his death, then the vesting of the estate would be postponed until her death. In view of the fact that the law favors the vesting of estates at the earliest possible moment, and, if possible, will so construe a will

as to vest the entire estate at the time of the testator's death, we cannot say that his intention in this respect is clearly expressed. As his intention is not clearly expressed, then we should resort to well recognized rules of construction to aid us.

A well established rule in this state is that words of survivorship, used in disposing of an estate, are presumed to relate to the death of the testator, rather than the death of the first taker, and that, where real estate is devised to one, in terms sufficient to give a fee simple, and a devise over is made conditioned upon the first taker dying without issue, the phrase 'dying without issue' is construed to refer to a death in the lifetime of the testator, unless a contrary intention is clearly expressed."

In addition, the Supreme Court later state in *Apple v. Methodist Hospital of Indiana, Inc.*, (1965) 138 Ind.App. 420, 206 N.E.2d 625, 627:

"A well settled rule of construction in this jurisdiction is that where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator coupled with a devise over in case of his death without issue, the words refer to a death without issue during the lifetime of the testator unless the contrary intention is clearly expressed and if the devisee survives the testator she takes an absolute estate in the fee even though she is childless. *National Malleable & Steel Castings Co. v. Goodlet* (1952), 7 Cir., 195 F.2d 8, certiorari denied, *Carter v. Simpson*, 344 U.S.

We believe a better method of discerning the testator's intention would be to decipher the meaning of the phrase in each provision through its context.

The contested provision reads:

"Said trustees shall pay the net income from said estate in convenient installments, not less frequently than quarterly, to my said son, Francis D. Watson, and my said daughter, Mary Cecile Donahue, for and during their natural lives, share and share alike, and to the survivor, provided, that if either my said son or daughter shall have died leaving a child or children him or her surviving, such child or children shall take the share in said net income which his, her or their parent would have taken if living."

Here the phrase "provided, that if ..." is an extension of the previous phrase. This is due to the use of a comma between the words "survivor" and "provided." In contrast similar language is set apart from the preceding phrase by the use of a semicolon in the termination provision:

"Upon the death of the survivor of my son and daughter and when my youngest grandchild shall have reached the age of twenty–one years, or when all my living grandchildren shall have reached the age of twenty–one years, said trust shall terminate and said trust estate shall be divided and distributed to my said grandchildren, share and share alike, per capita and not per stirpes, to whom, in such event, I will and devise said trust estate and fee simple and free from any trust; provided, that if any grandchild shall have died leaving a child or children him or her surviving, such child or children shall take the share which his, her or their parent would have taken if living."

■ As an extension of the previous phrase the provision for surviving issue can only be read as a modification of the surviv-

ing child's interest. As such the children share in the income equally until one of them dies. At that point the survivor must share the income with the deceased's surviving issue, if any. Thus it is of no consequence when the child dies. The only relevant fact is whether he or she died leaving issue. Since Francis died leaving issue Mary must share with them equally the income from the Trust. Thus the court did not err in its construction of the Will.

## B. RULE AGAINST PERPETUITIES

■ Mary contends the Trust is void by violating the rule against perpetuities.[4] She appears to argue that the rule requires the vesting of the estate no later than twenty–one years after Ellen's death. Such is not the case, it requires vesting no later than twenty–one years after the death of someone who is alive or in gestation at the creation of the estate, i. e., Ellen's death. *In re Lowe's Estate*, (1946) 117 Ind.App. 554, 70 N.E.2d 187. This puts the latest time for vesting at twenty–one years after the death of the youngest of Ellen's grandchildren who was alive at her death. Here the estate will vest at the latest when both of Ellen's children have died and all of the living grandchildren reach the age of twenty–one, which is clearly within the time limitations set up by the rule against perpetuities.

Judgment of the court in both cases is affirmed.

MILLER, J., and YOUNG, P. J., concur.

---

837, 73 S.Ct. 47, 97 L.Ed. 651; *Quilliam v. Union Trust Co. of Indianapolis* (1924), 194 Ind. 521, 142 N.E. 214."

*See also, Dawson v. McKee*, (1954) 124 Ind. App. 233, 116 N.E.2d 538.

4. The applicable rule is contained in IC 32–1–4–1:

"An interest in property shall not be valid unless it must vest, if at all, not later than twenty–one years after a life or lives in being at the creation of the interest."